

2016 JUN 20 [....] 8: 3[.]

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72848-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MICHAEL SHELTON, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 20, 2016 |

SCHINDLER, J. — For the first time on appeal, Michael Shelton contends that as

applied to an indigent defendant, the statute that requires imposition of a mandatory

deoxyribonucleic acid (DNA) fee violates substantive due process. Shelton also

challenges the requirement to obtain a mental health evaluation. Because the

substantive due process challenge to the DNA fee statute is not ripe for review and is not

manifest constitutional error under RAP 2.5(a)(3), we affirm imposition of the DNA fee but

remand to determine whether the statutory requirements to order a mental health

evaluation are met.

On October 23, 2014, the State filed an amended information charging Shelton

with assault in the second degree while armed with a deadly weapon. The State alleged

Shelton used a bottle to assault the victim, inflicting substantial bodily harm. A jury

convicted Shelton as charged of assault in the second degree while armed with a deadly weapon.

The court imposed a sentence of 15 months confinement and 18 months of community custody. The court ordered Shelton to have no contact with the victim, submit a DNA sample, and obtain a substance abuse evaluation and mental health evaluation within 30 days of his release.

The court ordered Shelton to pay the mandatory victim penalty assessment in the amount of $500 and the mandatory DNA fee in the amount of $100. The court waived the imposition of all discretionary financial obligations and interest on the mandatory $600 obligation. The judgment and sentence states, in pertinent part:

## IV. ORDER

IT IS ORDERED that the defendant serve the determinate sentence and abide by the other terms set forth below.

. . . .

**4.1    RESTITUTION, VICTIM ASSESSMENT, AND DNA FEE:**

. . . .

[X]  Restitution is not ordered.

**Defendant shall pay Victim Penalty Assessment** in the amount of **$500** (RCW 7.68.035 - mandatory).
**Defendant shall pay DNA collection fee** in the amount of **$100** (RCW 43.43.7541 - mandatory).

**4.2    OTHER FINANCIAL OBLIGATIONS:** . . .
(a) [ ] $ _____, Court costs (RCW 9.94A.030, RCW 10.01.160); [X] Court costs are waived;

(b) [ ] $ _____, Recoupment for attorney's fees to King County Public Defense Programs (RCW 9.94A.030); [X] Recoupment is waived;

. . . .

2

(e) [ ] $ _____, $100 State Crime Laboratory Fee (RCW 43.43.690); [X] Laboratory fee waived;

(f) [ ] $ _____, Incarceration costs (RCW 9.94A.760(2)); [X] Incarceration costs waived;

. . . .

**4.3 PAYMENT SCHEDULE:** The **TOTAL FINANCIAL OBLIGATION** set in this order is $600.
Restitution may be added in the future. The payments shall be made to the King County Superior Court Clerk according to the rules of the Clerk and the following terms:
. . . [X] On a schedule established by the defendant's Community Corrections Officer or Department of Judicial Administration (DJA) Collections Officer. Financial obligations shall bear interest pursuant to RCW 10.82.090. **The Defendant shall remain under the Court's jurisdiction to assure payment of financial obligations . . . for crimes committed on or after 7/1/2000 . . . until the obligation is completely satisfied.** Pursuant to RCW 9.94A.7602, if the defendant is more than 30 days past due in payments, a notice of payroll deduction may be issued without further notice to the offender. Pursuant to RCW 9.94A.760(7)(b), the defendant shall report as directed by DJA and provide financial information as requested.
[X] Court Clerk's trust fees are waived.
[X] Interest is waived except with respect to restitution.

Substantive Due Process

Shelton contends that as applied to an indigent defendant, the DNA fee statute, RCW 43.43.7541, violates substantive due process.[1]

A statute is presumed constitutional and a party bears the heavy burden of establishing a statute unconstitutional beyond a reasonable doubt. Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 215, 143 P.3d 571 (2006). An as-applied challenge to the constitutional validity of a statute is characterized by the "allegation that application of the

---

[1] The legislature amended the DNA fee statute, RCW 43.43.7541, in 2015 to add the language, "This fee shall not be imposed on juvenile offenders if the state has previously collected the juvenile offender's DNA as a result of a prior conviction." LAWS OF 2015, ch. 265, § 31. Because the remainder of the statute did not change and the amendment does not affect our analysis, unless otherwise noted, we refer to the current version of RCW 43.43.7541 throughout the opinion.

3

statute in the specific context" is unconstitutional. City of Redmond v. Moore, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004).

The United States Constitution guarantees federal and state government will not deprive an individual of "life, liberty, or property, without due process of law." U.S. CONST. amends. V, XIV, § 1. Article I, section 3 of the Washington Constitution guarantees "[n]o person shall be deprived of life, liberty, or property, without due process of law." In analyzing a substantive due process challenge, our Supreme Court has held the Washington due process clause does not afford broader protection than the Fourteenth Amendment. State v. McCormick, 166 Wn.2d 689, 699, 213 P.3d 32 (2009); Amunrud, 158 Wn.2d at 216 n.2; In re Pers. Restraint of Dyer, 143 Wn.2d 384, 393-94, 20 P.3d 907 (2001).

Substantive due process protects against arbitrary and capricious government action. Amunrud, 158 Wn.2d at 218-19. State interference with a fundamental right is subject to strict scrutiny. Amunrud, 158 Wn.2d at 220. Shelton concedes that because his challenge to the DNA statute does not affect a fundamental right, a rational basis standard of review applies. Under that deferential standard, "the challenged law must be rationally related to a legitimate state interest." Amunrud, 158 Wn.2d at 222.

DNA Fee Statute

In 1989, the legislature enacted a statute to use DNA identification as a tool for the investigation and prosecution of sex offenses and violent felony crimes. LAWS OF 1989, ch. 350. The legislature found the "accuracy of [DNA] identification . . . is superior to that of any presently existing technique" and recognized the "importance of this scientific breakthrough in providing a reliable and accurate tool for the investigation and prosecution of sex offenses as defined in RCW 9.94A.030(26) and violent offenses as

4

defined in RCW 9.94A.030(29)." LAWS OF 1989, ch. 350, § 1. The statute required every person convicted of a felony sex offense or violent offense to provide a blood sample for DNA "identification analysis and prosecution of a sex offense or a violent offense." LAWS OF 1989, ch. 350, § 4.

In 2002, the legislature amended the DNA statute to establish a DNA database that would contain DNA samples for all convicted felony offenders. LAWS OF 2002, ch. 289, §§ 1, 2. In addition to the importance of using the DNA database for the investigation and prosecution of criminal cases, the legislature found the DNA database is also an important tool for the exclusion of individuals subject to investigation or prosecution, the detection of recidivist acts, and the identification and location of missing and unidentified persons. LAWS OF 2002, ch. 289, § 1.

RCW 43.43.753 states, in pertinent part:

**Findings—DNA identification system—DNA database—DNA data bank.** The legislature finds that recent developments in molecular biology and genetics have important applications for forensic science. It has been scientifically established that there is a unique pattern to the chemical structure of the deoxyribonucleic acid (DNA) contained in each cell of the human body. The process for identifying this pattern is called "DNA identification."
The legislature further finds that DNA databases are important tools in criminal investigations, in the exclusion of individuals who are the subject of investigations or prosecutions, and in detecting recidivist acts. It is the policy of this state to assist federal, state, and local criminal justice and law enforcement agencies in both the identification and detection of individuals in criminal investigations and the identification and location of missing and unidentified persons. Therefore, it is in the best interest of the state to establish a DNA database and DNA data bank containing DNA samples submitted by persons convicted of felony offenses and other crimes as specified in RCW 43.43.754. DNA samples necessary for the identification of missing persons and unidentified human remains shall also be included in the DNA database.

5

The legislature required every person convicted of a felony offense to submit a DNA sample for DNA identification analysis. LAWS OF 2002, ch. 289, § 2. Former RCW 43.43.754(1) (2002) states, in pertinent part:

> Every adult or juvenile individual convicted of a felony, stalking under RCW 9A.46.110, harassment under RCW 9A.46.020, communicating with a minor for immoral purposes under RCW 9.68A.090, or adjudicated guilty of an equivalent juvenile offense must have a biological sample collected for purposes of DNA identification analysis.

The legislature adopted a new section that required the court to impose a $100 DNA fee for collection of a DNA sample "unless the court finds that imposing the fee would result in undue hardship on the offender." LAWS OF 2002, ch. 289, § 4.[2] The new section states:

> NEW SECTION. **Sec. 4.** A new section is added to chapter 43.43 RCW to read as follows:
> Every sentence imposed under chapter 9.94A RCW, for a felony specified in RCW 43.43.754 that is committed on or after the effective date of this act, must include a fee of one hundred dollars for collection of a biological sample as required under RCW 43.43.754, unless the court finds that imposing the fee would result in undue hardship on the offender. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030, payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. The clerk of the court shall transmit fees collected to the state treasurer for deposit in the state DNA data base account created under section 5 of this act.

LAWS OF 2002, ch. 289.

In 2008, the legislature amended the DNA fee statute to make the DNA fee mandatory without regard to hardship. LAWS OF 2008, ch. 97, § 3. The legislature deleted the language "for collection of a biological sample as required under RCW 43.43.754, unless the court finds that imposing the fee would result in undue hardship on

---

[2] The imposition and recovery of court costs and fees was unknown at common law and is therefore entirely statutory. State v. Smits, 152 Wn. App. 514, 519, 216 P.3d 1097 (2009); State v. Cawyer, 182 Wn. App. 610, 619, 330 P.3d 219 (2014).

the offender." LAWS OF 2008, ch. 97, § 3. As amended, the plain and unambiguous language of RCW 43.43.7541 states, "Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars." Former RCW 43.43.7541 (2008) states:

> **DNA identification system—Collection of biological samples—Fee.**
> Every sentence imposed under chapter 9.94A RCW, for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030, payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. The clerk of the court shall transmit eighty percent of the fee collected to the state treasurer for deposit in the state DNA database account created under RCW 43.43.7532, and shall transmit twenty percent of the fee collected to the agency responsible for collection of a biological sample from the offender as required under RCW 43.43.754.

The statute states that 80 percent of the fee is dedicated to the DNA database account under RCW 43.43.7532. RCW 43.43.7541. RCW 43.43.7532 establishes a state DNA database account to use "only for creation, operation, and maintenance of the DNA database under RCW 43.43.754."[3]

Ripeness and RAP 2.5(a)(3)

For the first time on appeal, Shelton contends there is no rational basis to require imposition of the mandatory DNA fee at sentencing on an indigent defendant. Shelton concedes the mandatory DNA fee serves the legitimate purpose of funding the DNA database. Shelton claims that absent a determination at sentencing that he has "the ability or likely future ability to pay," the DNA fee statute violates substantive due process. The State asserts the as-applied substantive due process challenge to the DNA fee statute is not ripe for review and is not a manifest constitutional error subject to review

---

[3] In 2011, the legislature amended RCW 43.43.7541 to add that for "all other sentences," the DNA fee is "payable by the offender in the same manner as other assessments imposed." LAWS OF 2011, ch. 125, § 1.

under RAP 2.5(a)(3). We agree with the State.

A preenforcement constitutional challenge to the mandatory DNA fee statute is ripe for review on the merits if the issue raised is primarily legal, does not require further factual development, and the challenged action is final. State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015); State v. Sanchez Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). The court must also consider the risk of hardship to the parties "if we decline to address the merits of his challenge at this time." Cates, 183 Wn.2d at 534-35.

The due process clause protects an indigent offender from incarceration based solely on inability to pay court ordered fees. U.S. CONST. amends. V, XIV, § 1; Bearden v. Georgia, 461 U.S. 660, 664, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983); State v. Nason, 168 Wn.2d 936, 945, 233 P.3d 848 (2010).

In Fuller v. Oregon, 417 U.S. 40, 44-46, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974), the Supreme Court upheld an Oregon statute that included procedural and substantive safeguards designed to protect the rights of indigent defendants while authorizing reimbursement from offenders who had the ability to repay court costs.

In Bearden, the Court held that revocation of probation based on the failure of an indigent offender to pay fines violated due process. Bearden, 461 U.S. at 672-73. The Court held the "sentencing court must inquire into the reasons for the failure to pay." Bearden, 461 U.S. at 672. The sentencing court cannot deprive an offender "of his . . . freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." Bearden, 461 U.S. at 672-73. However, the Court held that if the offender "willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection." Bearden,

8

461 U.S. at 668.

In State v. Curry, 118 Wn.2d 911, 829 P.2d 166 (1992), our Supreme Court addressed a constitutional challenge to the imposition of the mandatory victim penalty assessment. The court rejected the argument that "the statute could operate to imprison [defendants] unconstitutionally in the future if they are unable to pay the penalty." Curry, 118 Wn.2d at 917-18. Even though the statute contained no provision to waive the victim penalty assessment for an indigent defendant, the court held sufficient safeguards prevented incarceration for failure to pay the mandatory victim penalty assessment because the statute required a show cause hearing, the court had the discretion to treat a nonwillful violation more leniently, and incarceration would result only if the failure to pay was willful. Curry, 118 Wn.2d at 917-18.[4]

The court concluded constitutional principles are implicated only when the State seeks to enforce collection of the mandatory assessment and noted "imposition of the penalty assessment, standing alone, is not enough to raise constitutional concerns." Curry, 118 Wn.2d at 917 & n.3.

> "It is at the point of enforced collection . . . , where an indigent may be faced with the alternatives of payment or imprisonment, that he may assert a constitutional objection on the ground of his indigency."

Curry, 118 Wn.2d at 917[5] (quoting State v. Curry, 62 Wn. App. 676, 681, 814 P.2d 1252

---

[4] If an offender violates a condition of the judgment and sentence, the court may issue a summons for a show cause hearing. See RCW 9.94B.040(3)(b). If the court finds the violation is not willful, the court may modify the order. RCW 9.94B.040(3)(d); see also RCW 9.94A.6333. RCW 9.94A.6333 provides, in pertinent part:

> (1) If an offender violates any condition or requirement of a sentence, and the offender is not being supervised by the department, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section.
>
> . . . .
>
> [(2)](d) If the court finds that the violation was not willful, the court may modify its previous order regarding payment of legal financial obligations.

[5] Internal quotation marks omitted, alteration in original.

(1991)).

Here, Shelton's as-applied substantive due process challenge is primarily legal and the challenged action is final. See Cates, 183 Wn.2d at 534. But his constitutional challenge requires further factual development, and the potential risk of hardship does not justify review before the relevant facts are fully developed. See Cates, 183 Wn.2d at 535.

A constitutional challenge to the DNA fee statute is not ripe for review until the State attempts to enforce collection of the fee. "[T]he relevant question is whether the defendant is indigent at the time the State attempts to sanction the defendant for failure to pay." Sanchez Valencia, 169 Wn.2d at 789;[6] see also State v. Lundy, 176 Wn. App. 96, 108, 308 P.3d 755 (2013); State v. Kuster, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013). Because the State has not sought to enforce collection of the DNA fee or impose sanctions for failure to pay the DNA fee, Shelton's as-applied substantive due process challenge to the DNA fee statute is not ripe for review. See Lundy, 176 Wn. App. at 108 (constitutional challenge to imposition of mandatory victim penalty assessment and DNA fee not ripe for review "until the State attempts to curtail a defendant's liberty interest by enforcing them"); see also State v. Ziegenfuss, 118 Wn. App. 110, 112, 74 P.3d 1205 (2003) (Because the defendant has not yet failed to pay nor been incarcerated or otherwise sanctioned for failure to pay, "her due process rights have not been violated and her argument is not yet ripe for review.").

State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015), does not support Shelton's argument that his constitutional challenge to the DNA fee statute is ripe for review. The court in Blazina did not address imposition of mandatory fees. The court held RCW

_____

[6] Emphasis omitted.

10.01.160(3) requires the sentencing court to make an individualized inquiry into the defendant's ability to pay discretionary legal financial obligations. Blazina, 182 Wn.2d at 837-38. RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

But unlike discretionary legal financial obligations, the legislature unequivocally requires imposition of the mandatory DNA fee and the mandatory victim penalty assessment at sentencing without regard to finding the ability to pay.[7]

> [T]he legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing [mandatory legal financial] obligations. For victim restitution, victim assessments, [and] DNA fees, . . . the legislature has directed expressly that a defendant's ability to pay should not be taken into account. See, e.g., State v. Kuster, 175 Wn. App. 420, 306 P.3d 1022 (2013).

Lundy, 176 Wn. App. at 102; see also State v. Thompson, 153 Wn. App. 325, 338, 223 P.3d 1165 (2009) (DNA fee required irrespective of defendant's ability to pay); Kuster, 175 Wn. App. at 425 (court need not consider "the offender's past, present, or future ability to pay" mandatory victim penalty assessment and DNA fee).

We hold that because imposition of the mandatory DNA fee does not implicate constitutional principles until the State seeks to enforce collection of the DNA fee or impose a sanction for failure to pay, the as-applied substantive due process challenge to

---

[7] The judgment and sentence clearly reflects the distinction between mandatory and discretionary financial obligations.

11

RCW 43.43.7541 is not ripe for review.[8]

The as-applied substantive due process challenge to the mandatory DNA fee statute is also not a manifest error subject to review under RAP 2.5(a)(3).[9] To review the merits of the constitutional challenge to the DNA fee statute for the first time on appeal, Shelton must show the error is manifest and implicates a constitutional interest. RAP 2.5(a)(3); State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

Manifest error requires " 'a showing of actual prejudice.' " State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). Actual prejudice means "the claimed error had practical and identifiable consequences." State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014); O'Hara, 167 Wn.2d at 99. Whether the error is identifiable and the defendant can raise a claim for the first time on appeal turns on whether the record is sufficient to determine the merits of the claim. O'Hara, 167 Wn.2d at 99; Kirkman, 159 Wn.2d at 935. "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

Until the State seeks to enforce collection of the DNA fee or impose a sanction for failure to pay, Shelton cannot show his as-applied substantive due process claim is

---

[8] The State also asserts Shelton does not have standing. A criminal defendant "always has standing to challenge his or her sentence on grounds of illegality." State v. Bahl, 164 Wn.2d 739, 750, 193 P.3d 678 (2008). However, a defendant does not have standing to challenge a statute on constitutional grounds unless the defendant can show harm. Cates, 183 Wn.2d at 540. Because Shelton cannot show harm until the State seeks to enforce collection of the DNA fee, he does not have standing.

[9] RAP 2.5(a)(3) provides, in pertinent part:

**Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . manifest error affecting a constitutional right.

manifest constitutional error under RAP 2.5(a)(3). We also note the record contains no information about future ability to pay the mandatory $100 DNA fee. See State v. Stoddard, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016).

Mental Health Evaluation

Shelton contends the court erred in ordering him to obtain a mental health evaluation as a condition of community custody.

The plain and unambiguous language of former RCW 9.94B.080 (2008)[10] states the court may order a mental health evaluation only if the court finds Shelton "is a mentally ill person as defined in RCW 71.24.025" and mental illness likely "influenced the offense." Former RCW 9.94B.080 states:

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense. An order requiring mental status evaluation or treatment must be based on a presentence report and, if applicable, mental status evaluations that have been filed with the court to determine the offender's competency or eligibility for a defense of insanity. The court may order additional evaluations at a later date if deemed appropriate.[11]

Although the court found "mental health issues contributed to this offense" and "[t]reatment is reasonably related to the circumstances of this crime and reasonably necessary to benefit the defendant and the community," the court did not find Shelton "is a mentally ill person as defined in RCW 71.24.025." Former RCW 9.94B.080. The State concedes the court did not comply with the statutory requirements to order a mental

---

[10] LAWS OF 2008, ch. 231, § 53.

[11] (Emphasis added.) In 2015, the legislature amended RCW 9.94B.080 to state consideration of a presentence report is no longer mandatory. LAWS OF 2015, ch. 80, § 1 ("An order requiring mental status evaluation or treatment may be based on a presentence report.").

health evaluation. We accept the concession as well taken, and remand to determine whether to order a mental health evaluation according to the requirements set forth in former RCW 9.94B.080.

Statement of Additional Grounds

Shelton makes a number of arguments in the statement of additional grounds including whether the State violated his right to a fair trial by failing to timely provide complete discovery. At our request, the State filed a response to the statement of additional grounds. The State concedes an inadvertent discovery violation occurred in failing to deliver certain discovery to Shelton until the day before trial but argues Shelton cannot show prejudice. We agree. A continuance is an appropriate remedy for noncompliance with the discovery rule. State v. Krenik, 156 Wn. App. 314, 321, 231 P.3d 252 (2010). Where the defense does not move for a continuance, the defendant cannot establish actual prejudice. Krenik, 156 Wn. App. at 321. Here, the court agreed to continue the trial but Shelton refused to do so. We reject the remainder of the arguments in the statement of additional grounds as without merit.

We affirm imposition of the mandatory DNA fee but remand to determine whether the statutory requirements to order a mental health evaluation are met.

WE CONCUR: