# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>  v.<br><br>JIMMIE LOUIS TSCHABOLD,<br> AKA JIMMIE L TSCHABOLD,<br><br>          Appellant. | No. 55688-0-II<br>consolidated with<br>No. 56180-8-II<br><br><br>UNPUBLISHED OPINION |
| In the Matter of the Personal Restraint<br>Petition of<br><br>JIMMIE LOUIS TSCHABOLD,<br><br>          Petitioner. | |

MAXA, P.J. – Jimmie Tschabold was convicted of felony cyberstalking and felony violation of a domestic violence no-contact order. He appeals the trial court's community custody condition that if he is released early, he must obtain a mental health evaluation. He also challenges his convictions on multiple grounds in a statement of additional grounds (SAG) and a personal restraint petition (PRP). The convictions arose from Tschabold's conduct in sending nude photographs of his former girlfriend KC to her, her father, and her friends.

We hold that (1) the trial court had the authority to impose a mental health evaluation as a condition of community custody, but the court abused its discretion in doing so without finding Tschabold mentally ill as required by RCW 9.94B.080; (2) we reject Tschabold's assertions in

his SAG; and (3) we dismiss Tschabold's PRP. Accordingly, we affirm Tschabold's convictions and dismiss his PRP, but we reverse the imposition of the mental health evaluation condition and remand for the trial court to determine whether to order a mental health evaluation under RCW 9.94B.080.

## FACTS

*Background*

Tschabold was released from prison in July 2020. After his release, Tschabold made a to-do list that included "Revenge on [KC]," and "Send her nudes to everyone." Clerk's Papers (CP) at 176. At the time of his release, Tschabold had three no-contact orders regarding KC that prohibited Tschabold from contacting KC directly or indirectly, including by electronic means. And Tschabold knew of these no-contact orders.

That same day, Tschabold sent a Facebook message to KC's boyfriend with naked pictures of KC. Tschabold did the same thing to a number of KC's friends. Tschabold also attempted to contact KC using an app, but his attempts were unsuccessful because he entered KC's number incorrectly.

The next day, Tschabold sent messages to KC's father. He also sent naked pictures of KC to her father. Tschabold then created a Facebook profile using KC's name, which he used to message KC nude pictures of herself with a message that read "You have two days [KC] and all your porn pictures will be posted everywhere in Pierce County." CP at 178.

KC reported the messages to the police. Pierce County sheriff's deputy Christopher Sullivan responded. He saw the messages and pictures that Tschabold sent to KC. He then determined that there were several domestic violence protection orders in the system restraining Tschabold from contacting KC.

At some point Tschabold went to the Puyallup police department, and Sullivan requested that Tschabold be detained there so Sullivan could contact him. Tschabold agreed to let Sullivan review his phone, and when Sullivan opened the Facebook app, the fake profile immediately appeared. Sullivan arrested Tschabold and seized the phone as evidence. After executing a search warrant on Tschabold's phone, the police recovered the naked photos of KC.

The State charged Tschabold with cyberstalking, felony violation of a domestic violence no-contact order, and two counts of disclosing intimate images.[1]

*Pre-Trial Matters and Trial*

Tschabold was appointed defense counsel, but before the trial started, he asked to represent himself because his counsel would not file certain motions. After the court engaged Tschabold in a lengthy discussion, the court granted the request.

Before the trial began, Tschabold argued a number of motions, all of which the court denied.

At trial, Tschabold and other witnesses testified to the facts above. Tschabold testified that he had "been trying to get mental health and everything" and that he is "on so much medication." Report of Proceedings (Jan. 5, 2021) at 39.

The trial court found Tschabold guilty of cyberstalking and felony violation of a domestic violence no-contact order. At sentencing, the court imposed a community custody condition that Tschabold obtain a domestic violence and mental health evaluation and follow-up treatment. However, the court did not make a finding that Tschabold was mentally ill or that his condition likely influenced the offense.

---

[1] The State later dismissed the disclosing intimate images charges.

Tschabold appeals the imposition of the mental health evaluation. He also filed a PRP, which this court consolidated with the appeal.

ANALYSIS

A.    IMPOSING A MENTAL HEALTH EVALUATION CONDITION

Tschabold argues that the trial court did not have the authority to impose a mental health evaluation as a community custody condition. We hold that the trial court had the statutory authority to impose a mental health evaluation, but the court erred in imposing the condition without finding that Tschabold was mentally ill.

Whether a trial court has statutory authority to impose a community custody condition is reviewed de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If a court does have authority, the imposition of community custody conditions is reviewed for abuse of discretion. *State v. Johnson,* 184 Wn. App. 777, 779, 340 P.3d 230 (2014). A decision based on untenable grounds or contrary to law is an abuse of discretion. *Id.*

A trial court has the authority to order a defendant whose sentence includes a term of community custody to "undergo a mental status evaluation . . . if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense." RCW 9.94B.080.

In *State v. Brooks*, the court held that the trial court abused its discretion by ordering a mental health evaluation and treatment without finding that the defendant was mentally ill and that the condition likely influenced the offense. 142 Wn. App. 842, 851–52, 176 P.3d 549 (2008).

Similarly, in *State v. Shelton*, the court held that the trial court abused its discretion by ordering a mental health evaluation without making the necessary statutory findings under

former RCW 9.94B.080 (2008). 194 Wn. App. 660, 675-76, 378 P.3d 230 (2016). The court reasoned that the plain language of the statute mandated that a "court may order a mental health evaluation only if the court finds [the defendant] 'is a mentally ill person as defined in RCW 71.24.025.' " *Id.* at 675. And despite the fact that the "court found 'mental health issues contributed to this offense' and 'treatment is reasonably related to the circumstances of this crime and reasonably necessary to benefit the defendant and the community,' " such findings did not satisfy the requirements of former RCW 9.94B.080. *Id.* at 676 (quoting former RCW 9.94B.080). The court remanded for the trial court to determine whether to order an evaluation based on the requirements RCW 9.94B.080. *Id.*

Here, the trial court had the statutory authority to impose a mental health evaluation under RCW 9.94B.080. But the court abused its discretion by doing so without finding Tschabold mentally ill. *Brooks*, *Shelton*, and the language of the statute make clear that the court could order a mental health evaluation only if the court found that Tschabold is a "mentally ill person" as defined in RCW 71.21.025. The court did not make any findings regarding Tschabold's mental health or find he was mentally ill under RCW 71.24.025.

Accordingly, we reverse the trial court's imposition of a mental health evaluation condition and remand for the trial court to determine whether to order a mental health evaluation consistent with the requirements in RCW 9.94B.080.

B.    SAG CLAIMS

In a SAG, Tschabold raises six assertions of error. We reject these assertions.

1.    Arrest for the No Contact Order Violation

Tschabold asserts that law enforcement did not have probable cause to arrest him because there was no evidence that he violated the no-contact orders. We disagree.

5

The no-contact orders specifically prohibited Tschabold from directly or indirectly contacting KC, including through electronic means. Officers viewed screenshots of messages Tschabold sent to KC, and a search of his phone showed that he had contacted KC. As a result, they had probable cause to arrest Tschabold for violating the no-contact orders.

2.    Search Warrant

Tschabold asserts that the search warrant application was inaccurate, and there was no probable cause for the warrant because there was not a no-contact order with KC's father and because the disclosing intimate images charges were dismissed.

Again, the no-contact order specified that Tschabold could not contact KC directly or indirectly. Contrary to Tschabold's assertion that the search warrant relied on his contact with KC's father, the search warrant was based on Tschabold's direct contact with KC through the fake Facebook account he created. In addition, before law enforcement obtained the search warrant, Tschabold gave officers permission to look through his text messages and open the Facebook app, where the officers immediately saw the fake profile. As a result, there was probable cause for a search warrant.

Although the State dismissed the charge of disclosing intimate images, that fact is immaterial to probable cause. Given the graphic nature of the photos, officers reasonably believed that they were intimate photos. Once it was discovered that the photos were publically available, the State dismissed the charges. The search warrant was valid and supported by probable cause.

3.    "Multiplicious" Charges

Tschabold asserts that the State improperly combined his cyberstalking and violation of the no-contact order charges, which he refers to as a type of double jeopardy called

"multiplicious." SAG at 8. However, Tschabold does not explain how the State's charging documents were improper under Washington law. We decline to consider this assertion because it "does not inform the court of the nature and occurrence of the alleged errors." RAP 10.10(c).

4.    Continuous Act

Tschabold asserts that the State improperly used *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984) for a continuous act by combining the contact with KC's father with the cyberstalking charge. But this argument makes no sense, and we decline to consider it. RAP 10.10(c).

5.    Disclosing Intimate Photos Charges

Tschabold asserts that the State could not have charged him with disclosing intimate photos because the police did not take a picture of the nude photographs he sent to KC, her father, or friends. But the State dismissed these charges, and therefore this assertion is moot. And given the nature of the photos, the officers reasonably believed the photos to be intimate. Once it was determined that the photos were known to be public, the charges were dismissed.

6.    Unlawful Arrest

Tschabold asserts he was illegally detained under *Terry*[2] by another officer on behalf of deputy Sullivan. We disagree.

An officer may briefly detain a person without a warrant – a *Terry* stop – if the officer has a reasonable suspicion based on specific and articulable facts that the person has been or is about to be engaged in criminal activity. *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). Here, Sullivan saw the messages and pictures that Tschabold sent to KC and confirmed that no-contact orders were in place when he asked that Tschabold be detained. Therefore, the

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

detaining officer had a reasonable suspicion that Tschabold had been involved in criminal activity.

Tschabold also claims that he was pat searched even though the officer had no concern for his safety. However, an officer who detains a person may lawfully pat search the detainee. *State v. Byrd*, 178 Wn.2d 611, 617-18, 310 P.3d 793 (2013).

C.      PERSONAL RESTRAINT PETITION

Tschabold raises several claims in his PRP. We reject these claims.

1.      Probable Cause to Arrest

Tschabold argues that the State did not have probable cause to arrest him for a violation of a no-contact order or for disclosing intimate images. We disagree.

Former RCW 10.31.100 (2020) authorizes warrantless arrests where a police officer has "probable cause to believe that a person has committed . . . a felony." Probable cause exists, as required to justify a warrantless arrest, "where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Perez*, 5 Wn. App. 2d 867, 871-82, 428 P.3d 1251 (2018).

In addition, former RCW 26.50.110(2) (2019) states that officers can make a warrantless arrest if they have probable cause to believe that a person has violated various types of no-contact orders.

Here, Sullivan had probable cause to arrest Tschabold for violation of the no-contact orders. He saw the messages and images Tschabold sent to KC, confirmed the existence of the active no-contact orders, and observed the fake profile on Tschabold's phone. Sullivan had more

8

than sufficient facts to support probable cause that Tschabold violated the no-contact orders and to arrest him.

Tschabold also argues that his arrest for disclosing intimate images was unlawful, but the arrest report does not indicate that conduct was the reason he was arrested.

2. Search Warrant Application

Tschabold argues that the deputy obtaining the search warrant made false statements in the search warrant application for Tschabold's phone. We disagree.[3]

In *Franks v. Delaware*, the United States Supreme Court held that after a search warrant has been issued, a defendant is entitled to an evidentiary hearing regarding the veracity of factual allegations in the search warrant affidavit if (1) the defendant makes a substantial preliminary showing that the affiant knowingly and intentionally or with reckless disregard for the truth included a false statement in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause. 438 U.S. 154, 154-55, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). This test also applies to material omissions of fact. *State v. Chenoweth*, 160 Wn.2d 454, 474-75, 158 P.3d 595 (2007). The defendant must show that an omission in a search warrant affidavit was both intentional and material to be entitled to a *Franks* hearing. *See State v. Garrison,* 118 Wn.2d 870, 872-73, 827 P.2d 1388 (1992).

Here, Tschabold fails to make a substantial preliminary showing that the deputy who applied for the search warrant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit. Tschabold notes that the deputy referenced his contact with KC's father when there was not a no-contact order with the father,

---

[3] Tschabold also emphasizes that law enforcement held his phone for 28 days before applying for a warrant to search it. But he does not make any legal argument regarding this fact.

but the affidavit also referenced contact with KC. Tschabold also claims that the deputy should have known that the nude photos of KC were not private, but he does not provide any support for that statement.

      3.    Claims Relating to Representation

First, Tschabold argues he received ineffective assistance of counsel because his attorney refused to file a motion to suppress the information on his cellphone and refused to file a *Franks* motion. But Tschabold was allowed to represent himself following this refusal, and he made these motions himself. The trial court denied the motions. Therefore, Tschabold cannot show prejudice and his claim fails. *See State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (holding that a defendant must show prejudice to prevail on an ineffective assistance claim).

Second, Tschabold claims that the trial court should have done a competency check regarding his knowledge before allowing him to represent himself. But he does not support this claim with any citation to the record or legal argument. Therefore, we decline to consider it. *See In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 519, 45 P.3d 1103 (2002).

Third, Tschabold claims that the trial court failed to provide him with an investigator. But Tschabold did have a court-appointed investigator and kept them up until the day of the trial. The investigator withdrew because she was asked to interview witnesses in an expedited manner on the day of the trial. The court provided Tschabold the opportunity to interview the witnesses after the investigator withdrew, and Tschabold did conduct those interviews. This claim fails.

      4.    Ability to Argue Motions

Tschabold argues that he was denied oral argument on his Cr 3.5 motion based on alleged falsity in the search warrant and probable cause. We reject this argument. The record shows that the trial court heard argument on each of Tschabold's motions before trial.

5. Destroying Evidence

Tschabold claims that that the State destroyed the digital images of KC used to obtain the search warrant, which constituted a *Brady*[4] violation. We disagree.

Under *Brady* and its progeny, the State is required to turn over all potentially exculpatory evidence or evidence that could be used as impeachment evidence. *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). To establish a *Brady* violation, the defendant bears the burden to show that (1) the evidence at issue must be favorable to the defendant, either as exculpatory or impeachment evidence; (2) the State must have withheld the evidence; and (3) the evidence must be material to the defense. *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

Here, Tschabold has not shown how the photographs of KC were favorable to him. Therefore, this claim fails.

6. Motion for Continuance

Tschabold argues that the trial court improperly denied his motion for a continuance after the State produced a large amount of evidence and the trial court denied his motions on the day of trial. He also argues that the trial court erred in not appointing co-counsel for him when the court-appointed investigator withdrew on the first day of trial.

However, nowhere in the record did Tschabold ask the court for a continuance because his motions were being denied, nor is there a record of any continuance motion being filed. And nothing in the record shows that Tschabold asked for co-counsel. Therefore, these arguments fail.

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

## CONCLUSION

We affirm Tschabold's convictions and dismiss his PRP, but we reverse the imposition of the mental health evaluation condition and remand for the trial court to determine whether to order a mental health evaluation under RCW 9.94B.080.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

MAXA, P.J.

We concur:

_____

LEE, J.

_____

VELJACIC, J.