# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>  Respondent,<br><br>  v.<br><br>LEE ALLEN MCINTOSH,<br><br>  Appellant. | No.  57405-5-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Lee A. McIntosh appeals from his conviction of second degree assault. McIntosh argues he received ineffective assistance of counsel because his counsel did not request a "no duty to retreat" jury instruction.  McIntosh also argues, and the State concedes, the trial court erred when it ordered a mental health evaluation and treatment without making the necessary findings to do so.  McIntosh also raises three claims in a Statement of Additional Grounds (SAG).

We hold that McIntosh did not receive ineffective assistance of counsel.  But we accept the State's concession regarding the ordered mental health evaluation and treatment and reverse and remand to the trial court to consider making the required findings for such an order.  Finally, we do not review McIntosh's SAG claims because they either rely on evidence outside of the record or do not meet the requirements of RAP 10.10(c).

FACTS

I. BACKGROUND

In April 2020, McIntosh was on a walk in a Tacoma neighborhood. McIntosh encountered Zachary Milluzzo near Milluzzo's house, leading to a physical altercation between the two.

A neighbor called the police, and Officer Anthony Wilkerson was dispatched to the scene. When Officer Wilkerson arrived, he saw McIntosh on top of Milluzzo and commanded McIntosh to get off. McIntosh complied and was detained.

McIntosh and Milluzzo both sustained injuries. McIntosh was arrested and treated for his injuries at the jail, and Milluzzo was transported by ambulance to a nearby hospital. McIntosh was charged with second degree assault.

II. MCINTOSH'S TRIAL

McIntosh's case proceeded to a jury trial. The State and McIntosh each provided evidence and testimony of the physical altercation, but their versions differed.

A. TRIAL TESTIMONY

The State called Milluzzo, who explained that he was walking to his car while talking to himself on the morning of April 3, 2020. Milluzzo looked right and did not see anyone before he suddenly hit the ground. Milluzzo did not have any further recollection of the incident.

The State also called Milluzzo's neighbors who witnessed the altercation. None of the neighbors saw the beginning of the altercation, but their attention was drawn to the scene when someone began yelling. The neighbors all testified consistently that they saw McIntosh on top of Milluzzo, punching and strangling him. McIntosh was also hitting Milluzzo's head on the ground repeatedly. Milluzzo tried to push McIntosh away, but apparently "couldn't do that much" or

"fight back." 3 Verbatim Rep. of Proc. (VRP) (Aug. 30, 2022) at 219, 222. One neighbor testified that McIntosh appeared angry, yelling "angry words" and "a lot of swear words." 2 VRP (Aug. 29, 2022) at 150, 155.

Officer Wilkerson also testified. He explained that when he arrived, McIntosh was on top of Milluzzo, strangling him. Milluzzo had "no fight" in him and was "just like a rag doll." 2 VRP (Aug. 29, 2022) at 93. Officer Wilkerson ordered McIntosh to get off Milluzzo, and McIntosh fell off onto nearby grass. Officer Wilkerson put handcuffs on McIntosh and then turned his attention to Milluzzo, who needed medical attention. When Wilkerson focused back on Milluzzo, McIntosh stated, "He's the devil. I'm doing God's work," and asked, "Why are you interfering with God's plan?" 2 VRP (Aug. 29, 2022) at 100.

McIntosh testified and described a different version of events. According to McIntosh, he came across Milluzzo while taking a walk. Milluzzo was saying something when he "came at" and collided with McIntosh, and the pair "were just kind of on the ground really fast." 3 VRP (Aug. 30, 2022) at 260. McIntosh said that Milluzzo immediately bit McIntosh's thumb, and his thumb was in Milluzzo's mouth during the entirety of the physical altercation. McIntosh was unable to get his thumb out of Milluzzo's mouth, so he screamed for help. To try and dislodge his thumb, McIntosh explained, "I was pulling, pulling, pulling, and I punched him, and he wouldn't let go. I tried to push him off, and he wouldn't do it." 3 VRP (Aug. 30, 2022) at 262. By the time Officer Wilkerson arrived, McIntosh poked Milluzzo in the eyes, and Milluzzo finally released the thumb.

B. JURY INSTRUCTIONS

The court finalized the jury instructions and agreed to include instructions related to a self-defense theory. Jury instruction 12, the self-defense instruction, explained when the use of force is lawful to defend oneself:

> The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured, and when the force is not more than is *necessary*.
>
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

Clerk's Papers (CP) at 213 (emphasis added). The next instruction explained that "necessary" meant that "under the circumstances" as they appeared to McIntosh during the altercation, "(1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force used was reasonable to effect the lawful purpose intended." CP at 214.

Jury instruction 14, the first aggressor instruction, explained that if the jury determined McIntosh was the aggressor and created the necessity for him to use self-defense, self-defense was not available as a defense to the charged crime.

Defense counsel did not propose, and the trial court did not give, a "no duty to retreat" instruction.

C. VERDICT, SENTENCING, AND COMMUNITY CUSTODY CONDITIONS

Ultimately, the jury found McIntosh guilty of second degree assault. At sentencing, the trial court imposed 38 months confinement and 18 months of community custody. As a condition of his community custody, the trial court ordered McIntosh to "undergo an evaluation for treatment

4

for . . . mental health." CP at 243. During the sentencing hearing, the trial court stated, "There seemed to me to be an element of mental illness involved with this crime." VRP (Sept. 30, 2022) at 12-13. The trial court did not make any other findings or statements on the record about McIntosh's mental health.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

McIntosh argues he received ineffective assistance because his counsel did not request a "no duty to retreat" jury instruction. McIntosh asserts he was entitled to the instruction because the jury could have determined retreat was a reasonable alternative to engaging with the victim. We disagree.

To show ineffective assistance of counsel, the appellant must demonstrate that their attorney's performance was deficient and the deficient performance prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). To establish ineffective assistance of counsel based on "counsel's failure to request a particular jury instruction, the defendant must show [they were] entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023

(2013).  We engage in a strong presumption that counsel's performance was reasonable.  *Grier*, 171 Wn.2d at 33.

It is well settled that a person has no duty to retreat when they are assaulted in a place where they have a right to be.  *State v. Redmond*, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003); *see also* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.05 (5th ed. 2021).  A "no duty to retreat" jury instruction should be given when sufficient evidence is presented to support it; specifically, " 'where a jury may conclude that flight is a reasonably effective alternative to the use of force in self-defense.' "  *Redmond*, 150 Wn.2d at 493 (quoting *State v. Williams*, 81 Wn. App. 738, 744, 916 P.2d 445 (1996)).  But a no duty to retreat instruction is not appropriate in all cases of self-defense.  A no duty to retreat instruction "need not be given . . . when it is *unnecessary to the defendant's case theory* and when it would be superfluous because the issue of retreat was not raised or the facts show that the defendant was in retreat."  *State v. Wooten*, 87 Wn. App. 821, 825, 945 P.2d 1144 (1997) (emphasis added), *review denied*, 134 Wn.2d 1021 (1998).  And while each party may have instructions embodying its theory of the case if there is evidence to support the instruction, "it is error to give an instruction which is not supported by the evidence."  *State v. Benn*, 120 Wn.2d 631, 654, 659, 845 P.2d 289 (no duty to retreat instruction was properly denied when there was no evidence to support it), *cert. denied*, 510 U.S. 944 (1993).

McIntosh argues he was entitled to a no duty to retreat instruction.  He contends both parties presented evidence that he and Milluzzo were able "to move around at will," which showed the jury could have considered retreat would have been a reasonable alternative to force.  Appellant's Opening Br. at 10.  Without a no duty to retreat instruction, according to McIntosh, his claim of

self-defense would have been "undercut" and "allowed the jury to consider [his] ability to retreat in determining whether his conduct was necessary." Appellant's Opening Br. at 24. Thus, McIntosh argues his counsel was deficient for failing to request the instruction.

McIntosh's argument is unpersuasive. The parties had very different versions of the events, but based on either version, there is no evidence to support a no duty to retreat instruction.

McIntosh's version was that he was abruptly attacked by Milluzzo, who immediately bit his thumb. McIntosh then had to fight Milluzzo off in self-defense to remove his thumb from Milluzzo's mouth, and his thumb was being held the "entire time." 3 VRP (Aug. 30, 2022) at 264-65. Thus, he was physically unable to retreat from the scene, leaving no room for the jury to speculate about whether he should have done so. While McIntosh was entitled to a self-defense instruction under these facts, they do not support a no duty to retreat companion instruction.

The State's version of the facts similarly had the altercation between McIntosh and Milluzzo beginning very quickly. Milluzzo testified that he was walking toward his car when he was suddenly struck to the ground. The neighbors testified that by the time they saw the fight, McIntosh was on top of Milluzzo, punching and strangling him. Milluzzo attempted to push McIntosh off of him, but was unable to and had little fight in him. Based on the State's version of the facts, nothing about McIntosh's conduct would have constituted self-defense. *See* CP at 213 (jury instruction 12) ("The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured . . . .").

Therefore, under either set of facts, the jury would have had no occasion to prejudice McIntosh by wrongfully believing, without a jury instruction, that he was required to retreat. If the jury believed McIntosh's version of the facts, retreat was not an option. If the jury believed

the State's version of the facts, there was no self-defense in the first place. Simply put, there is no evidence supporting a "no duty to retreat" instruction. *See Redmond*, 150 Wn.2d at 493. Because McIntosh has not shown he was entitled to the instruction, he has not shown he received ineffective assistance of counsel. *Thompson*, 169 Wn. App. at 495 (a defendant must be entitled to the jury instruction before it is ineffective assistance for a failure to request it).

II. MENTAL HEALTH EVALUATION

McIntosh next argues the trial court erred in imposing a mental health evaluation as part of his community custody because the trial court failed to make the necessary findings to support the evaluation. The State concedes the trial court erred when it did not make the necessary findings. We accept the State's concession and reverse.

We review crime-related community custody conditions for an abuse of discretion. *State v. Brooks*, 142 Wn. App. 842, 850, 176 P.3d 549 (2008). A trial court abuses its discretion when its decision is based on untenable grounds, including those contrary to the law. *Id*.

As part of any sentence, the trial court may impose crime-related prohibitions and affirmative conditions. RCW 9.94A.505(9). Trial courts may order a defendant to undergo a mental health evaluation as a community custody condition if the trial court complies with certain procedures:

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, *if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025,* and that this condition is likely to have influenced the offense.

RCW 9.94B.080 (emphasis added). Relevant to this case, RCW 71.24.025(40) defines a "mentally ill person[]" as a person who is "[a]cutely mentally ill," a "[c]hronically mentally ill adult," or a

"[s]eriously disturbed person." RCW 71.24.025(3), (13), (48). In turn, each of the classifications of a mentally ill person is also defined in the statute. *See* RCW 71.24.025(3), (13), (48).

Here, the trial court commented that there appeared to be "an element of mental illness involved with [McIntosh's] crime" and ordered McIntosh to undergo a mental health evaluation. VRP (Sept. 30, 2022) at 12-13. But, as conceded by the State, the trial court made no findings that McIntosh was a mentally ill person under the requirements of RCW 71.24.025. We accept the State's concession and hold the trial court abused its discretion when it ordered a mental health evaluation and treatment as a community custody condition. Accordingly, we remand to the trial court to make the necessary findings to determine whether to order a mental health evaluation. *See State v. Shelton*, 194 Wn. App 660, 676, 378 P.3d 230 (2016) (remanding to the trial court to determine whether to order a mental health evaluation when the trial court initially failed to make the necessary findings under RCW 71.24.025), *review denied*, 187 Wn.2d 1002 (2017).

## III. SAG ISSUES

McIntosh asserts three claims in his SAG. First, McIntosh asserts prosecutorial misconduct for failure to introduce evidence of Milluzzo's medical records that rebut that Milluzzo was strangled, asserting those medical records would have been exculpatory for him. However, the medical records to which McIntosh refers are not in our record on appeal. Because the record is insufficient to review this claim, we cannot consider it. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (the court "cannot review" claims that rely on evidence outside of the appellate record).

McIntosh's second SAG claim states, "Mental health diagnosis coupled with violent history." SAG at 1. McIntosh appears to claim error to issues relating to the victim's medical and mental health history, but does not inform the court of the nature of the alleged error. Without some sort of explanation of this claim, we do not consider it. RAP 10.10(c) (SAG claims are required to inform the court of the nature and occurrence of the alleged errors); *see also State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011) (explaining we do not discuss SAG claims that fail to inform us of the nature and occurrence of the alleged error).

Finally, McIntosh claims that his finger prints from his arrest right after the altercation were missing a thumb print due to his bite injury. McIntosh asserts that this document could have been evidence that was "contradictory . . . of the prosecutor[']s tale of events." SAG at 2. Despite this claim, the record on appeal does not include McIntosh's arrest records for this court to consider. Thus, we cannot review this claim. *See Alvarado*, 164 Wn.2d at 569.

## CONCLUSION

We determine McIntosh did not receive ineffective assistance of counsel, but reverse and remand for the trial court to make findings of fact to determine whether McIntosh should undergo a mental health evaluation and treatment. We do not consider McIntosh's SAG claims because each claim either relies on evidence outside of the record or does not meet the requirements of RAP 10.10(c).

No. 57405-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

MAXA, J.