IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

        v.

LESLIE ELAINE TRAMBLE, A/K/A
DASHEQUA Q HOLMES WALKER,
LEXUS BLACK WILSON,

        Appellant.

No. 86845-4-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Leslie Tramble appeals from her conviction for one count of assault in the second degree, with special verdict findings of domestic violence and a firearm enhancement. She argues that her sentence is cruel and therefore violates article I, section 14 of our state constitution, but she fails to satisfy the requirements of RAP 2.5(a)(3) in order to have this issue considered for the first time on appeal. Tramble also challenges the imposition of certain legal financial obligations in light of the court's finding of indigency. While we remand for the court to strike the legal financial obligations, Tramble's constitutional claim is waived and we do not reach it. Accordingly, we affirm.

FACTS

Leslie Tramble faced one count of assault in the first degree, with special allegations that the crime was one of domestic violence and committed with a firearm, after an altercation with her partner, Justin Waters. In October 2018,

Tramble and Waters began dating. Waters moved in with Tramble in June 2020, while she was pregnant. Tramble would later testify that Waters was jealous, damaged household items, used derogatory language, and became physically violent towards her about six months into their relationship. Following a miscarriage, his violence escalated and included incidents of choking and striking her. After Tramble became pregnant again, Waters continued to push and strike her with his belt and other objects.

In October 2020, Tramble reported to the police that Waters placed a gun to her head, but the prosecutor's office declined to pursue charges due to insufficient evidence. She attempted to secure restraining orders twice, but withdrew each after reconciling with Waters. She later sought a third order after the events at issue in this case.

On May 2, 2021, after Tramble refused Waters' request to meet at a park where she was walking with their son, Waters arrived at her home and, without saying anything to Tramble, took their son and drove away. Waters returned with their crying child 30 minutes later. An argument ensued, escalating when Tramble knocked Waters' hat off his head. Her neighbor intervened and Tramble went into his home to process what had occurred. Before Tramble returned home that night her neighbor and his wife agreed to accompany her to seek a restraining order the next morning, since they had witnessed the altercation.

Later that night, Waters returned to Tramble's house to search for his wallet. Tramble did not know why Waters was back, and she retrieved her firearm, walked onto the porch, and ordered him to get off her property. Tramble then fired two

warning shots into the air, but Waters remained standing in the street looking at her. She then fired at him, striking him in the leg and causing him to fall to the ground. As she approached, another verbal dispute developed. Waters flipped Tramble to the ground and she dropped her firearm during the fall; she quickly regained control of it while he attempted to crawl away. Tramble then used her gun to strike Waters' forehead. Waters required stitches in the emergency room but was not hospitalized.

On July 2, 2021, the State charged Tramble with one count of assault in the first degree and included allegations that the crime was one of domestic violence based on the relationship between Tramble and Waters and Tramble was armed with a firearm at the time of the assault. At trial, an expert testified that Tramble suffered from battered person syndrome. The jury did not enter a verdict on the charged crime, but found her guilty of the lesser included crime of assault in the second degree. The jury also found by special verdicts that the State had proved beyond a reasonable doubt both that Tramble and Waters were "intimate partners" as defined by statute and Tramble was armed with a firearm at the time of the assault.

At sentencing, the State sought six months of incarceration on the assault conviction followed by a mandatory term of 36 months on the firearm enhancement, to be served consecutively to the base sentence. Tramble requested that the court impose an exceptional sentence below the standard range of zero months on the underlying assault conviction, but acknowledged the mandatory 36-month prison sentence for the firearm enhancement. The court

sentenced Tramble to three months on the assault conviction and 36 months on the firearm enhancement. The court also ordered 18 months of community custody and, after finding Tramble indigent, imposed only the legal financial obligations (LFOs) that were mandatory at the time of sentencing.

Tramble timely appealed.

ANALYSIS

I. Constitutional Challenge to Mandatory Firearm Sentence Enhancement

Tramble assigns error to the sentencing court's imposition of the additional consecutive 36-month prison term on the firearm enhancement. She avers that her sentence constitutes cruel punishment under article I, section 14 of the Washington Constitution because it is disproportionate to her underlying offense. The State argues that Tramble may not pursue this claim on appeal because the alleged error is not manifest under RAP 2.5(a)(3), and separately avers that mandatory firearm enhancements do not violate the constitutional prohibition against cruel punishment. The State is correct.

Our state constitution provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." WASH. CONST. art. I, § 14. But, under RCW 9.94A.533(3)(e), "[n]otwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." In *State v. Brown*, our Supreme Court held that this "absolute language" deprives sentencing courts of the discretion to impose an exceptional sentence regarding deadly weapon

enhancements. 139 Wn.2d 20, 29, 983 P.2d 608 (1999), *overruled in part on other grounds by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

Here, both parties submitted sentencing memoranda; Tramble's requested only a downward deviation below the standard range, zero months, on her assault conviction. She conceded that the firearm enhancement statute required the court to impose an additional 36 months in prison, separate from any base term of incarceration, both in her memorandum to the trial court and during the sentencing hearing. While she noted at the hearing that the firearm enhancement was a severe sanction and discussed mitigating factors, she did not argue in briefing or verbally that the firearm enhancement was disproportionate.

"Parties wishing to raise constitutional issues on appeal must adhere to the rules of appellate procedure." *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). Generally, appellate courts may decline to review claims not raised at trial. RAP 2.5. However, RAP 2.5(a)(3) provides a narrow exception, allowing appellants to introduce a "manifest error affecting a constitutional right" for the first time on appeal. *See State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988). "To determine whether manifest constitutional error was committed there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *State v. A.M.*, 194 Wn.2d 33, 38, 448 P.3d 35 (2019) (alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara,* 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). "This is a standard distinct from the review of the alleged constitutional violation itself, as RAP 2.5 'serves as a gatekeeping function.'" *In re Det. of T.C.*, 11 Wn. App. 2d

51, 61, 450 P.3d 1230 (2019) (internal quotation marks omitted) (quoting *A.M.*, 194 Wn.2d at 38). "Without an affirmative showing of actual prejudice, the asserted error is not 'manifest' and thus is not reviewable under RAP 2.5(a)(3)." *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). RAP 2.5 must be satisfied when the appellant presents an as-applied constitutional challenge that was not raised in the trial court. *State v. Shelton*, 194 Wn. App. 660, 670, 378 P.3d 230 (2016).

In her opening brief, Tramble neither cites RAP 2.5(a)(3) nor acknowledges that she is raising this issue for the first time on appeal. She also fails to show that the imposition of the firearm enhancement resulted in practical and identifiable consequences, a necessary demonstration for manifest error. *A.M.*, 194 Wn.2d at 38. In her reply to the State's waiver argument, she further misinterprets the operation of RAP 2.5(a)(3) by citing *State v. Gregory*, where the court converted a death sentence to life imprisonment, despite the fact that the claim was presented for the first time on appeal. 192 Wn.2d 1, 36, 427 P.3d 621 (2018). Tramble, however, misconstrues the nature of the challenge in *Gregory*, where our Supreme Court held that Washington trial courts imposed the death penalty in an arbitrary and racially biased manner that violated the state constitution's prohibition on cruel punishment. *Id.* at 35. No comparable allegation of bias, cruelty, or arbitrary application exists in this case regarding the mandatory firearm enhancement, which has repeatedly been held constitutional. *Id.* at 25.

Even setting aside the procedural bar on arguments raised for the first time in reply,[1] Tramble does not address controlling case law that requires her to show that the error was both manifest and resulted in actual prejudice such that it may be considered for the first time on appeal. *McFarland*, 127 Wn.2d at 334. Because she fails to provide the requisite analysis to overcome the procedural bar to review, we decline to reach the merits of this challenge. *See Johnson*, 119 Wn.2d at 170.

II.     Legal Financial Obligations

Tramble contends, and the State concedes, that this court should remand for the trial court to strike both the victim penalty assessment (VPA) and DNA collection fee from her judgment and sentence based on its finding of indigency at sentencing. We accept the State's concession as consistent with controlling statutory authority and case law, and remand for correction of the judgment and sentence to align with current law on LFOs for indigent defendants.

Affirmed in part, reversed in part, and remanded for the trial court to strike the VPA and DNA fees.

_____
Hazelrigg, ACJ

WE CONCUR:

_____          _____
Smith, CJ.                                          Mann, J.

---

[1] RAP 10.3(c).

- 7 -