[Nos. 39716-8-I; 43050-5-I.    Division One.    June 1, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN DARBY McDONALD, *Appellant*.

*In the Matter of the Personal Restraint of* STEVEN DARBY McDONALD, *Petitioner.*

*Antonio Salazar,* for appellant.

*Steven Darby McDonald,* pro se.

*K. Garl Long, Prosecuting Attorney,* and *Erik Pedersen, Deputy,* for respondent.

AGID, A.C.J. — The State convicted Steven McDonald of arson in the first degree and the court sentenced him as a persistent offender. Standby counsel assisted him while he represented himself at trial, and he alleges on appeal that

the trial court committed reversible error when it failed to make an adequate inquiry into standby counsel's asserted conflict of interest. We agree with McDonald that the trial court failed to inquire into the conflict. Because the failure to inquire automatically denied McDonald the right to counsel fundamental to a fair trial, we reverse and remand for a new trial and do not reach McDonald's additional assignments of error.

## FACTS

McDonald was charged by information with first degree and second degree arson. Count I was based on allegations that McDonald poured gasoline on a door mat of a motel room that Mr. and Mrs. Clarke were staying in and then set fire to the mat. The fire ignited the motel room door. The second degree arson charge was based on allegations that McDonald set fire to the Clarkes' car some time earlier in the evening. Count III was based on a gun found in McDonald's motel room after he was arrested.

McDonald already had two robbery convictions and was therefore a "three strikes" candidate if convicted. But one week after he was arraigned, McDonald moved to proceed pro se. The proceedings in his case were a procedural quagmire, due in large part to McDonald's ignorance of substantive and procedural law. By the time of trial, all three Skagit County judges had either recused themselves or were removed by the parties' affidavits of prejudice, and the County had to import two additional judges from Whatcom County, one of whom presided over McDonald's jury trial.

Judge Rickert conducted the hearing on McDonald's motion to represent himself and, after an extensive *Faretta*[1] inquiry, granted the motion and appointed a public defender as standby counsel. At later hearings before him, Judge Rickert made additional *Faretta* inquiries and asked if McDonald had decided to be represented by counsel. Each

---

[1] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

time, McDonald reaffirmed his desire to represent himself. On April 4, Judge Rickert allowed Public Defender Gary Gaer to substitute as standby counsel for McDonald. Judge Rickert later recused himself.

On June 13, Judge McIntosh had an extensive colloquy with McDonald and said that he would probably appoint an attorney over McDonald's wishes. But on June 27, he withdrew after McDonald filed an affidavit of prejudice. On July 25, Judge Bruhn also withdrew after the State filed an affidavit of prejudice. Visiting Judge Moynihan presided over most of the remaining pretrial hearings and the trial.

The question of whether standby counsel would continue to represent McDonald arose early during the proceedings. On May 16, 1996, McDonald filed a motion to dismiss Mr. Gaer and appoint private standby counsel. On July 19, the prosecutor filed a motion to dismiss Mr. Gaer, because McDonald had filed a lawsuit against the Skagit County Public Defender.

McDonald repeated his request to dismiss Mr. Gaer in a motion filed on July 31. On August 1, the prosecutor moved for substitute standby counsel, alleging a conflict of interest because McDonald had sued Mr. Gaer in federal court. After Mr. Gaer said that his ability to assist McDonald was not impaired by the suit, the trial court denied the motion.

On September 4, before visiting Judge Nichols, the fifth judge assigned to the case, Mr. Gaer moved to withdraw and for substitution of new standby counsel. Mr. Gaer informed the court that the Skagit County Prosecutor had just undertaken Mr. Gaer's defense in federal court against McDonald's suit. The trial court, without further meaningful inquiry, denied the motion.

The prosecutor questioned McDonald's competence throughout the proceedings and asked the court if he should have a mental health evaluation. Both the trial court and McDonald's counsel said they had not observed anything that led them to believe McDonald was incompetent. On April 25, the prosecutor moved to have McDonald sent to Western State Hospital to determine whether he

was competent to stand trial. The court granted the motion, and Dr. Gagliardi at Western concluded that McDonald was competent for trial. McDonald acknowledged Dr. Gagliardi's report and his competence to stand trial during pretrial hearings but, at the same hearing, requested a mental health evaluation of whether he had diminished capacity when he gave a postarrest statement to the police.

The trial court granted the motion, and McDonald went back to Western State. Once there, McDonald refused to give the mental health professionals access to his prior medical records. Dr. Gagliardi indicated that, based on the available information, it was his opinion that McDonald was competent to waive his rights at the time of the statement. The State then notified him that it would not introduce his statements at trial.

After a four-day trial in September 1996, the jury convicted McDonald of first and second degree arson and the court sentenced him as a persistent offender. At the sentencing hearing, the trial court entered findings that McDonald had been competent to proceed to trial as of May 23, 1996.

McDonald appealed. After he filed his opening brief, he moved to represent himself on appeal in part because appellate counsel did not raise 18 issues McDonald insisted were essential to his appeal. A commissioner ordered the trial court to hold a hearing to determine whether McDonald was competent to represent himself on appeal. After he refused to answer any of the trial court's *Faretta* questions at the hearing, the court again sent McDonald to Western State to evaluate his competency. He refused to answer any questions posed by the evaluating physicians at Western. The trial court then found McDonald incompetent to represent himself on appeal, primarily because he refused to answer any questions. McDonald has since moved for substitute appellate counsel and filed a personal

restraint petition (PRP) alleging ineffective assistance of appellate counsel.[2]

## DISCUSSION

■ The Sixth Amendment gives a criminal defendant the right to effective assistance of counsel.[3] When a defendant alleges a violation of this right, we conduct de novo review based on the entire record.[4]

We cannot overemphasize the primary importance of the right to counsel: "[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have."[5] Over 65 years ago, United States Supreme Court Justice Sutherland wrote:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a

---

[2]We deny the motion and dismiss the PRP based on our resolution of the right to counsel issue.

[3]*State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995), *review denied*, 129 Wn.2d 1012 (1996).

[4]*Id*; *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

[5]Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1, 8 (1956).

party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.[6]

■ ■ Effective assistance includes "a duty of loyalty, [and] a duty to avoid conflicts of interest."[7] An actual conflict of interest exists "when a defense attorney owes duties to a party whose interests are adverse to those of the defendant."[8] When defense counsel asks to withdraw because he has a conflict of interest, we must reverse if the trial court fails to inquire into the nature of the conflict, even if there is no actual prejudice.[9] This strict rule exists because:

> [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the [trial] available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.[10]

Thus, when a trial court requires an attorney who asserts a conflict of interest to continue representing a defendant without making a full inquiry into the nature and potential

---

[6]*Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S. Ct. 55, 77 L. Ed. 158 (1932).

[7]*Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[8]*White*, 80 Wn. App. at 411-12.

[9]*In re Personal Restraint of Richardson*, 100 Wn.2d 669, 677, 675 P.2d 209 (1983).

[10]*Holloway v. Arkansas*, 435 U.S. 475, 490-91, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

consequences of the conflict, "reversal is automatic." This is because the "assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' "[11] These principles apply equally to an attorney that a court has appointed as "standby counsel."[12]

Here, the trial court committed reversible error when it failed to conduct a sufficient inquiry into Mr. Gaer's request to withdraw due to a conflict of interest. Initially, the State moved to have new standby counsel assigned after Mc-Donald sued Mr. Gaer in federal court. At that time, Mr. Gaer told the court that the lawsuit did not present a conflict of interest. Later, Mr. Gaer notified the court of a potential conflict of interest and himself moved to substitute in a new standby counsel.[13]

Mr. Gaer told the trial court that the conflict was not immediately apparent when McDonald sued him in federal court. But when the Skagit County Commissioners funded Mr. Gaer's defense by appointing the Skagit County Prosecutor as Mr. Gaer's defense counsel in the federal suit, Mr. Gaer was in a dilemma: "I don't know how I can possibly talk to a member of the prosecutor's office, even the civil division, about the lawsuit or what it encompasses." Mr. Gaer's written motion expanded on the dilemma:

> The filing of the lawsuit has the effect of waiving the attorney client protection for Mr. McDonald of the confidential-

---

[11]*Holloway*, 435 U.S. at 488-89 (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (Stewart, J., concurring)).

[12]*See State v. Benn*, 120 Wn.2d 631, 666, 845 P.2d 289 (effective assistance of counsel analysis applies to standby counsel), *cert. denied*, 510 U.S. 944 (1993).

[13]We note that Mr. Gaer's and the deputy prosecutor's motions conform with the Rules of Professional Conduct. *See* RPC 1.7(b) (conflict of interest with attorney's own interests); 1.8(b) (lawyer shall not use information learned in representing client to disadvantage of client without prior consent); 1.15(b)(6) (lawyer may withdraw for good cause); 3.8(b) (prosecutor will take reasonable steps to give defendant opportunity to obtain counsel).

ity of our communications.[14] If I am to cooperate in my own defense with the county prosecutor, I will be compelled to discuss matters regarding confidential discussions held with Mr. McDonald. I cannot participate in any matter in his defense if those activities can and must be discussed with the same agency that is prosecuting Mr. McDonald.[15]

When asked, Mr. Gaer informed the trial court that a hearing in the federal lawsuit was scheduled on September 16, 1996, the same day the arson trial was to begin. After noting that several other judges had already been on the case, the trial court said that the motion to withdraw

> may have ramifications in the Supreme Court and ramifications on the civil side. Basically, until we get instructions from another court, we are just going to forge ahead. To that extent, I don't want to get sidetracked.
>
> As I'm sure Mr. McDonald has been told by other judges, the purpose of standby counsel is to give him the benefit of somebody with a legal education and somebody who has been on the firing line before. He can take that advice or reject or whatever he wants, so long as Mr. Gaer is comfortable in that relationship. I must say I'm reluctant. Do I understand you are asking the Court at this point to make the decision or are you, any way the Court wants to make it or are you asking the court to make it in some certain way?

Mr. Gaer said that he was advising the court of the conflict and it was for the court to decide what further action was necessary. The trial court asked the parties if they were aware of any case law that applied to the situation. Although Mr. Gaer, the prosecutor, and the pro se defendant did not cite any relevant case law to the court, the prosecutor did opine that the defendant should either proceed without standby counsel, or proceed with Mr. Gaer.

---

[14]Statements by a pro se defendant to his standby counsel are privileged. *See State v. Bebb*, 108 Wn.2d 515, 525, 740 P.2d 829 (1987).

[15]Mr. Gaer also moved to have his investigator, who had been assisting McDonald, removed from the case. Apparently, McDonald had been using the investigator for the federal lawsuit as well as to prepare for the arson case.

The trial court decided:

> Well, the Court isn't going to revisit the question at this time of standby counsel. That's [not] going to happen. The Court perceives from every practical point of view to keep bringing in new people up to speed is really a waste of everybody's time, including the Defendant[']s.
>
> I hear Mr. McDonald to say it is helpful for him to have the investigator from the Public Defender helping to work the case. The Court perceives that the civil lawsuit is under no pressure to move fast, certainly with regard to Mr. Gaer's involvement, it can be shelved for the time being so there is no necessity for him to impugn attorney-client privilege and the like. The Court would hold him in at this point and perceive there is no conflict that can't be overcome.

While we recognize that McDonald's behavior created substantial problems for the Skagit County Court, unfortunately the trial court's decision deprived him of his right to effective counsel. Despite the difficult situation, all of McDonald's making, it was incumbent on the court to make sufficient inquiries into the nature of the alleged conflict of interest to satisfy the Sixth Amendment. The court should have asked about the status of the federal lawsuit, the nature of the allegations against Mr. Gaer, whether Mr. Gaer had already disclosed client confidences to his attorney in the civil division of the Skagit County Prosecutor's Office, whether the prosecutor had erected a "chinese wall" as a prophylactic measure to avoid learning about any disclosures of McDonald's communications, and what if anything Mr. Gaer's attorney had learned about McDonald's defense strategy or details of the case. Because the court did not ask or consider these issues, there is no information in the record that might describe the extent of any actual conflict between Mr. Gaer's duties to McDonald and his defense in the federal lawsuit. While we sympathize with the court's desire to escape a chaotic procedural morass, we must nevertheless reverse McDonald's conviction

and remand for a new trial.[16] We address a few of the many additional issues McDonald raises because they may arise again on retrial.

A. McDonald's Competency

McDonald argues that until his competency at the time of the arson is determined, a finding on his competency to waive counsel must be deferred.[17] The State argues that the trial court did not abuse its discretion when it determined he was competent to waive counsel and stand trial. We agree.

To find a defendant competent, a court must determine whether the defendant (a) understands the nature of the proceedings against him; (b) is able to assist in his own defense; and (c) knowingly and intelligently decided to waive counsel.[18] By statute, such an inquiry may also review (a) the nature of the charges; (b) the range of allowable punishments for the charged crimes; and (c) possible defenses to the crimes.[19] A trial court must make a specific finding that a defendant is or was competent to waive the right to counsel.[20]

As we explained earlier, there were numerous hearings on McDonald's competency and this desire to waive counsel. At a postsentencing hearing, the trial court

[16]We note that if McDonald pursues the same tactic on retrial, the Skagit County Prosecutor should advise the County Commissioners to appoint outside counsel for McDonald's trial counsel or, at a minimum, take steps to isolate the attorney prosecuting McDonald from the attorney defending McDonald's counsel.

[17]McDonald also requests a full psychological evaluation to determine his competency at the time he committed the offense. McDonald did not file written notice of an insanity or diminished capacity defense before the first trial. See RCW 10.77.030(1). And he emphatically told the doctors at Western State Hospital, as well as the trial court, that he was not asserting either defense and refused to cooperate fully with the mental health examination he requested. Under these circumstances, no further examination is warranted.

[18]*State v. Hahn*, 106 Wn.2d 885, 895, 726 P.2d 25 (1986) (citing *Faretta*, 422 U.S. at 835).

[19]RCW 10.77.020(1); *State v. Hutchinson*, 135 Wn.2d 863, 877, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999).

[20]RCW 10.77.020(1). The statute does not specifically require that the finding be in writing.

reviewed why it found McDonald competent to proceed to trial:

> If you have read all of the transcripts then you are well aware of the effort that the courts went through, myself included, in order to try to convince Mr. McDonald to avail himself of counsel . . . .

> Mr. McDonald literally exceeded in hours—if you can possibly add up the number of times we spent on all those hearings, we discussed it, and you will see, if you read those, you know that we were all very concerned about those issues, and still are, that Mr. McDonald didn't avail himself of counsel, and Mr. McDonald adamantly expressed he did not want counsel. He was competent to proceed on his own.

> An excess of caution is what prevailed upon me the first time to have McDonald sent to Western State to insure that he was at least competent to proceed with his own defense during this time. . . .

The court's written findings state:

> 1. The Defendant was competent as of May 9, 1996, the date of the Western State Hospital report, to stand trial—he had the capacity to understand the nature of the proceedings against him, and had the capacity to assist in his own defense.

> 2. The Defendant was advised of the dangers and disadvantages of his decision in waiving his right to counsel, having been advised on numerous occasions and at great length of the jeopardy in which he placed himself by choosing to act pro se.

The record fully supports these findings. McDonald was competent at the time he waived counsel as well as at each stage of the proceedings when the trial court tried to convince him to reconsider his decision to proceed pro se. The trial court correctly determined that McDonald knew the nature of the charge against him, the jeopardy that would attach with a conviction, and the disadvantages of proceeding without an attorney. In addition, the record is replete with examples of McDonald's ability to bring motions on his own behalf; clearly, he was able to assist in his

own defense.[21] We hold that McDonald was competent when he waived his right to counsel and at all times when he declined the trial court's offers to appoint counsel to defend him. He fails to establish how his competency at the time of the offense is relevant to his competency to stand trial. We affirm the trial court's ruling.

## B. Second Degree Arson Jury Instruction

McDonald contends he was prejudiced by the "to convict" instruction on second degree arson (burning the Clarkes' car). On remand, the court should use WPIC 80.06, which adequately addresses this concern.

The trial court instructed the jury that to convict McDonald of second degree arson, as to the element of damage, the jury must find that "the fire damaged any building, structure or erection appurtenant to or joining any building, motor vehicle or property . . . ." Although this language tracks WPIC 80.05, which defines second degree arson, there is some potential for confusion from the two references to "building." If the court uses WPIC 80.06, which instructs: "That the [fire] [or] [explosion] damaged ____(fill in item)," the potential for confusion will not arise.

## C. Evidence of Prior Robbery Conviction Introduced at Trial

McDonald argues that he was prejudiced when his witness inadvertently referred to McDonald's prior conviction for robbery. The State responds that any prejudicial effect is outweighed by the witness' laudatory testimony on behalf of McDonald. On retrial, the trial court should conduct a hearing outside the presence of the jury, pursuant to ER 403 and 404, to determine the admissibility of this testimony.

## D. Pro Se Supplemental Brief Issues

McDonald raises numerous issues in his many pro se

---

[21]Each hearing was peppered with McDonald's motions to suppress, dismiss, be dressed appropriately for trial, have arson and psychological investigator/experts appointed, etc.

supplemental briefs. They are either without merit or are irrelevant, given our disposition of the case.

E. Personal Restraint Petition Issues

McDonald's argument regarding his personal restraint petition is, in essence, an allegation of ineffective assistance of appellate counsel. Because we are remanding for another trial, we dismiss the petition.[22]

## CONCLUSION

The trial court violated McDonald's right to effective assistance of counsel when it failed to make an adequate inquiry into the nature and extent of the alleged conflict of interest between Mr. Gaer and McDonald. Because the trial court had been fully apprised of the unique situation in which Mr. Gaer had been placed, the trial court had an affirmative duty to conduct this inquiry and safeguard McDonald's rights.

The motion for new appellate counsel is denied, the PRP is dismissed and the case is reversed and remanded for a new trial.

BECKER and APPELWICK, JJ., concur.

Review granted at 139 Wn.2d 1015 (2000).

---

[22]We also deny McDonald's motion for substitute appellate counsel and note for the record that there is no merit to the ineffective assistance contentions.