# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56637-1-II |
| Respondent, | Consol. No. 56704-1-II |
| v. | UNPUBLISHED OPINION |
| O'NEAL PAYNE III, | |
| Appellant. | |

CHE, J. — O'Neal Payne III appeals his convictions and sentence for commercial sex abuse of a minor and fourth degree assault with sexual motivation. Payne also filed a motion to vacate the judgment and dismiss his charges, which was transferred to us as a personal restraint petition and consolidated with this appeal.

In a mall parking lot, Payne approached two females, a 17-year-old and an 18-year-old, entered their car, and offered them money to have sex with him at his hotel room. During the pendency of his case, Payne had two defense counsel withdraw, and Payne experienced a series of continuances that delayed his trial from May until December. Ultimately, Payne proceeded to trial self-represented where he was found guilty as charged.

Payne argues that (1) the trial court erred by allowing his second defense counsel to withdraw days before trial based on Payne's unvaccinated status and the ongoing COVID-19 pandemic, (2) the trial court violated his constitutional right to privately confer with his attorney by allowing Payne to appear by video, in a different location than his attorney, at a hearing

where the court determined Payne waived his right to counsel, (3) the trial court erred by finding that he made an unequivocal, knowing, intelligent, and voluntary waiver of his right to counsel, (4) the trial court erred by entering a sexual assault protection order (SAPO) protecting BA, who was not a victim of a sex offense, and by entering an invalid expiration date for the SAPO protecting BK, and (5) the trial court made several errors regarding community custody conditions in the judgment and sentence. Payne's personal restraint petition also raised multiple grounds.

We hold that (1) the trial court did not err by allowing Payne's second counsel to withdraw, (2) even if the trial court violated Payne's right to access counsel, that error was harmless beyond a reasonable doubt, and (3) Payne's waiver of his right to counsel was unequivocal, knowing, intelligent, and voluntary. Therefore we affirm Payne's convictions. But we also hold that the trial court made multiple errors in Payne's judgment and sentence and remand for correction in accordance with this opinion. Finally, we hold that Payne fails to show that he is entitled to collateral relief and dismiss his personal restraint petition.

FACTS

In March 2021, BK and BA, who were 17 and 18 years old, respectively, were in BK's car in the Vancouver mall parking lot when they were approached by Payne. The girls could not hear what Payne was saying to them from outside of the car. Payne, uninvited, got into BK's car. Once inside, Payne asked the girls to go to his hotel room and have sex with him. The girls told him "no" and to "get out." Rep. of Proc. (RP) (Dec. 13, 2021) at 238. Payne claimed to be a well-known pimp in Minnesota and pulled out a wad of hundred dollar bills, saying he would

pay them to have sex. Eventually, Payne got frustrated and exited the car. As he left the car, he caressed BA's cheek, telling her "you know where to find me." RP (Dec. 13, 2021) at 243.

After Payne walked away from their car, BK and BA drove to the other side of the mall and found a security guard. The security guard called law enforcement. Police ultimately arrested Payne at the hotel where he had told BK and BA he was staying.

The State charged Payne with commercial sex abuse of a minor—a felony, involving 17-year-old BK, and fourth degree assault with sexual motivation involving 18-year old BA—a misdemeanor. Trial was originally set for May 17. On May 11, Payne's defense counsel moved for a continuance, which the trial court granted over Payne's objection. The trial court re-set trial for June 28.

On June 24, Payne's defense counsel moved for substitution of counsel based on an alleged breakdown of communication between Payne and himself. New counsel was appointed and trial was reset for August 2. After a series of continuances from both defense counsel and the State, trial was set for November 1. On October 29, defense counsel requested to postpone trial due to a COVID-19 outbreak in the jail where Payne was housed. Defense counsel also argued that he was entitled to information as to whether Payne was vaccinated or not, and he would not be comfortable going to trial with an unvaccinated client. Payne, defense counsel, and the trial court agreed to set trial over one day to allow time to test Payne for COVID-19 and to continue testing him during trial.

Due to the unavailability of material witnesses, the trial was continued twice more until December 13. On December 9, defense counsel moved to withdraw from the case. He explained that he was "not willing to risk his health or life" by sitting next to Payne during trial who was

unvaccinated for COVID-19. Clerk's Papers (CP) at 138. Counsel stated he would withdraw his

motion if Payne tested negative for COVID-19 prior to and during trial. CP at 138. The trial

court explained that the jail could not accommodate that request and granted counsel's motion to

withdraw.

Payne expressed, as he had at nearly every previous hearing, his disagreement with

continuances and his desire to move forward with trial as soon as possible. He told the trial court,

"if he is withdrawing, I'm going to stick to my gun, and I'm ready to go Monday. No ands, ifs,

or buts about it, with or without him." RP (Dec. 9, 2021) at 128. The trial court appointed a new

defense counsel and set a hearing for the following day to address Payne's request to represent

himself.

The next day, a Friday, Payne told the trial court that he did not get the phone number or

name of new counsel. Newly appointed counsel informed the court that she and Payne had not

spoken, and the court took a break for them to do so. Counsel told the court:

> I think Mr. Payne's main concern is getting this trial done, so he wants to go on
> Monday. I can't say (inaudible) need a new trial date. I explained our options as
> standby counsel and he is more interested [i]n that. Once again, it's a little tough
> for me. I'm—to tell the Court, you know, I mean, I guess we can find someone for
> standby counsel on Monday. How—we just know nothing about the case. We just
> got the information late yesterday.
>
> He did mention some things (inaudible) and I explained to him that it's
> Friday. Trial starts Monday. So I think, you know, my suggestion was, why don't
> we do the last trial set, get a review date. If you want to go pro se after, you know,
> we can do that. He was very adamant about going on Monday, so I told him I would
> tell the Court.

RP (Dec. 10, 2021) at 10-11.

4

The trial court asked Payne how he would like to proceed, and Payne responded that he wanted newly appointed counsel to obtain and admit "a few video feeds" and his cell phone into evidence. RP (Dec. 10, 2021) at 11-12. The trial court attempted to clarify its question for Payne, explaining that newly appointed counsel would need a continuance to become familiar with the case and obtain the evidence Payne wanted. Payne responded:

> I will love her forward to, you know, help me in this case. She doesn't have to really do anything except for, you know, obtain the video and admit my phone into evidence. I can prove everything else myself. But if she sits beside me in the case, like, I would want her, you know, like put the win on her record.

RP (Dec. 10, 2021) at 12-13. Payne proceeded to highlight the ways he believed the State's witnesses were lying, stating, "I'm the only one telling the truth but, you know, they're continuing to hold onto lies, which is going to make the judicial system look bad, not me. So I'm ready to go on Monday." RP (Dec. 10, 2021) at 13.

Newly appointed counsel added that she tried to explain to Payne that it would be easier for her to obtain some of the evidence that he sought and she could always move to standby counsel at a later date if he wanted to proceed pro se. Payne responded:

> Yeah, because I won't be able to obtain these things. . . . so I'm going to need [new counsel] or somebody to assist me with that. . . .
>
> You know, I would assign somebody as my counsel. But as far as someone stepping into the fray and saying that they want to push me back for another 60 days or something like that, I'm not going to . . . stand for that. I'm just ready to go on Monday. I have all the questions written down. I have all the proof to prove that I'm innocent or not guilty, whichever way you want to go with that. And I'm ready to present it right now if I can or on Monday. I'll go through trial. I'll do a judge trial or, you know, whatever. However I need to prove my innocence, I'm willing to do that with or without anyone. I stand on that.

RP (Dec. 10, 2021) at 14-15.

The trial court noted that trial was set for the next business day, Monday, and that new counsel would need a continuance to be prepared. The trial court anticipated that trial would not be until early January. Payne rejected the idea of a continuance until early January, saying "Well, I will refuse. I will refuse. I am ready to go on Monday." RP (Dec. 10, 2021) at 15.

The trial court proceeded to question Payne to ensure that he made an informed choice to waive his right to counsel. Payne stated that he had never studied law or represented himself or anyone else in a criminal action. When the trial court explained the maximum sentence he faced if he were found guilty of the charges against him, Payne said "It doesn't matter." RP (Dec. 10, 2021) at 17. The trial court asked Payne if he was familiar with the rules of evidence. Payne responded

> The only thing I know that I would have to admit evidence . . . beforehand. I really have no evidence to provide except for the video footage that's already been provided. There are a couple more things that I might be able to ask to be admitted into the case as far as maybe a polygraph test. I now it's admissible. What else? But during rea—not readiness, I can't think of the word, what is it? . . . opening statements, I can ask all these things to be admitted into . . . evidence.

RP (Dec. 10, 2021) at 18. The trial court commented, "Okay, so let me just kind of stop you there. That's entirely wrong, okay?" RP (Dec. 10, 2021) at 18.

When the trial court asked Payne to explain why he did not want an attorney, Payne responded, "Your Honor, the only reason I don't want an attorney—well, I—I'm not saying that I don't want an attorney. The thing is, that I've been here for nine months. I never—I've never waived [m]y 60-day speedy trial rights." RP (Dec. 10, 2021) at 21. Payne then complained at length about his first two appointed counsel. The trial court told Payne, "in my opinion, it would be far better for you to be defended by a trained lawyer than you representing yourself. It's

6

unwise of you to try to represent yourself. It's clear to me that you're unfamiliar with the law . . . court procedure . . . [or] the Rules of Evidence. I would strongly urge you not to represent yourself." RP (Dec. 10, 2021) at 23. Payne responded, "I understand . . . I am not going to allow anyone to continuously to push me back when I have things on the outside that I need to attend to." RP (Dec. 10, 2021) at 23. Payne explained that he wanted to proceed because he was ready for trial and because of considerations related to his music career.

When the trial court asked Payne if, in light of the penalties that he would face if found guilty, he still wanted to represent himself and give up his right to be represented by an attorney, Payne said "Yes, I would like to present my case myself. . . . I've been in this situation like this before . . . [my attorney] took it to trial. . . . I went to trial in August [2020]." RP (Dec. 10, 2021) at 24-25. After Payne confirmed that his decision to represent himself was entirely voluntary, the trial court found that he knowingly and voluntarily waived his right to counsel.

At trial, Payne expressed his desire to obtain evidence from his Facebook account and video footage from his booking. The trial court reiterated that it was too late for him to gather evidence without moving to continue trial. The trial court appointed standby counsel to answer Payne's questions on procedures during trial.

The State admitted surveillance video from the mall parking lot showing Payne approaching BK's vehicle, getting inside for four to five minutes, and then walking away toward a hotel. BA and BK testified at trial, but Payne did not cross-examine either of them.

Officer Trent Harris testified that he responded to the mall where he spoke with BK and BA and ultimately assisted with arresting Payne. Payne briefly cross-examined Officer Harris, eliciting testimony that the girls never told him that Payne gave them his hotel room number.

After the State rested its case, Payne declined to testify himself and told the court "I guess we'll just continue forward with the next two—with the two alleged victims." RP (Dec. 14, 2021) at 294. The trial court explained that BK and BA were the State's witnesses and they had completed their testimony. Payne informed the court that he thought BK and BA would be returning to the stand to be questioned again. The trial court explained to him that was not the case. Payne responded, "we could just move forward" and told the court he had no other evidence to present. RP (Dec. 14, 2021) at 294-96. Payne gave a very brief closing argument, stating in part, "hopefully, I presented enough evidence to prove my innocence. . . . I guess we'll just get on with it and let the rest handle itself." RP (Dec. 14, 2021) at 335.

The jury found Payne guilty as charged. Following the verdict, Payne told the trial court that he would be filing a motion for a mistrial. He explained that he thought he would have a chance to question BK and BA again. He complained that he "might not even get the opportunity to even present" his evidence because "I'm in a situation to where both of my lawyers waited until the last minute. They pushed me out and they excluded evidence from me." RP (Dec. 14, 2021) at 368. He continued, "I have to stand here and fend for myself with limited information and evidence and knowledge of the law." RP (Dec. 14, 2021) at 369. Payne also moved for a new trial at his sentencing hearing, reiterating that he was forced to represent himself because his attorney quit days before trial. The trial court denied Payne's motion.

The trial court imposed a sentence at the high end of the standard range. The trial court found Payne indigent pursuant to RCW 10.101.010(3)(a)-(c) on the felony judgment and sentence but checked the box on his misdemeanor judgment and sentence that Payne was not indigent. The trial court ordered Payne to have no contact with BK and BA for 10 years. The trial

court ordered Payne to undergo an evaluation for treatment for mental health. The trial court also ordered Payne to pay legal financial obligations including a $500 victim penalty assessment (VPA) and $100 DNA collection fee. The judgment and sentences included language ordering Payne to pay supervision and collection fees.

Payne appeals.

ANALYSIS

I. WITHDRAWAL OF DEFENSE COUNSEL

Payne argues that the trial court erroneously forced him to choose between his right to counsel and his right to speedy trial by allowing Payne's counsel to withdraw days before trial. Specifically, Payne argues that the trial court erred by finding that Payne's counsel had a conflict of interest based on his refusal to proceed to trial with a client who had not received the COVID-19 vaccine. We disagree.

We review a trial court's ruling on an attorney's motion to withdraw for abuse of discretion. *State v. Hegge¸* 53 Wn. App. 345, 350, 766 P.2d 1127 (1989); s*ee also State v. Stark,* 48 Wn. App. 245, 252-53, 738 P.2d 684 (1987). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Nguyen*, 131 Wn. App. 815, 819, 129 P.3d 821 (2006). CrR 3.1(e) permits a lawyer to withdraw from a criminal case set for trial only upon consent of the court for "good and sufficient reason shown." A conflict of interest is a recognized basis under CrR 3.1(e) for a finding of good cause to allow counsel to withdraw. *See State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997); *State v. McDonald*, 96 Wn. App. 311, 320, 979 P.2d 857 (1999).

To support his argument, Payne focuses on RPC 1.7(a), which identifies certain conflicts of interest that *require* a lawyer to withdraw from representation. Payne contends that his counsel's conflict of interest did not fall within the type of conflicts contemplated by RPC 1.7(a)(2), thus the trial court erred by permitting counsel to withdraw. But Payne provides no authority requiring a specific showing of a conflict of interest as identified in RPC 1.7(a)(2) before a trial court allows an attorney to withdraw. The proper inquiry is whether "good and sufficient reason" for withdrawal exists; "good and sufficient reason" is not limited to conflicts identified in RPC 1.7(a)(2).

Notably, RPC 1.16(b)(7) permits a lawyer to withdraw from representing a client if good cause for withdrawal exists. Here, the trial court found that good cause supported defense counsel's withdrawal. In the height of the Omicron surge of the COVID-19 pandemic, many State agencies and employers were requiring vaccination and significant safety precautions were implemented. Risk mitigation effectiveness and the long-term effects of COVID-19 infection remained largely unknown. Counsel expressed that he would not go to trial with an unvaccinated client whose infection status was unknown given counsel's concerns for his own health and safety. Under these circumstances, the trial court's decision that counsel's concerns constituted good and sufficient reasons for withdrawal was not an abuse of discretion.[1]

---

[1] To the extent Payne suggests that the trial court's decision to allow counsel's withdrawal implicated his speedy trial rights, Payne fails to sufficiently develop this argument. He does not establish that either his time-for-trial right under CrR 3.3 or his constitutional speedy trial right under article I of the Washington Constitution and the Sixth Amendment of the United States Constitution were violated.

## II. RIGHT TO CONFER WITH COUNSEL

Payne argues that reversal is required because the trial court violated his constitutional right to privately confer with his attorney by allowing Payne to appear by video, in a different location than his attorney, at the hearing where the court determined Payne waived his right to counsel. We disagree.

Both the United States Constitution and the Washington Constitution guarantee criminal defendants the right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art 1, § 22; *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009). The constitutional right to counsel requires that defendants be able to confer privately with their attorneys at all critical stages of the proceedings. *State v. Anderson*, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022). "The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful." *Id*. The inquiry into whether there was a violation of a defendant's constitutional right to privately confer with counsel is fact-specific. *See State v. Gonzales-Morales*, 138 Wn.2d 374, 979 P.2d 826 (1999); *Anderson*, 19 Wn. App. 2d 556.

The "deprivation of the right to counsel is a fundamental constitutional claim that can be raised for the first time on appeal, so long as the claim is manifest, as required by RAP 2.5(a)(3)." *Anderson*, 19 Wn. App. 2d at 562. As explained above, "'manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." *Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "[T]he focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009).

11

Deprivation of counsel in a criminal case constitutes structural error. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 691, 363 P.3d 577 (2015). In contrast, interference with right to counsel (by, for example, not providing defendant a forum to confer privately with his attorney) is subject to a constitutional harmless error analysis. *See* RAP 2.5(a)(3); *Anderson*, 19 Wn. App. 2d at 562; *O'Hara*, 167 Wn.2d at 99-100.

Payne implies that the alleged deprivation of counsel, here, constituted structural error that requires automatic reversal because it "pervaded and contaminated his entire case." Br. of Appellant 37. We disagree. In *State v. Bragg*, 28 Wn. App. 2d 497, 536 P.3d 1176 (2023), Bragg argued that the trial court violated his constitutional right to confer with his counsel by requiring him to participate in all nontribal hearings via video conferencing while his attorney appeared in court. Bragg argued that the court committed structural error necessitating automatic reversal. *Id*. at 511. Division One of this court disagreed. We agree with Division One that "[t]he applicable test for prejudice is the constitutional harmless error analysis." *Bragg*, 28 Wn. App. 2d at 504. Under the constitutional harmless error analysis, we presume prejudice and the State bears the burden of proving harmlessness beyond a reasonable doubt. *Id*. A constitutional error is nonetheless harmless if the error would not have changed the outcome of the proceeding. *Id*. at 512.

Here, even assuming, without deciding, that Payne has met his burden to show a manifest constitutional error, his argument fails because any error was harmless beyond a reasonable doubt. Payne contends that "it is impossible to guess how the opportunity for private consultation might have affected [his] understanding of [the hearing], as well as his ultimate decision to waive counsel and proceed to trial pro se." Br. of Appellant 39. We disagree.

The record is clear that Payne was resolute in his decision to proceed to trial the following business day, Monday, even if that meant proceeding self-represented. After Payne's new counsel told the court that she had explained to Payne it would be easier for her to get the evidence he sought as his counsel, but that she would need a continuance, Payne emphasized his commitment to proceeding to trial: "But as far as someone stepping into the fray and saying that they want to push me back for another 60 days or something like that, I'm not going to . . . stand for that. I'm just ready to go on Monday." RP (Dec. 10, 2021) at 14. The Payne rejected the idea of a continuance until early January, saying "Well, I will refuse. I will refuse. I am ready to go on Monday." RP (Dec. 10, 2021) at 15.

The trial court engaged in a lengthy exchange with Payne and his newly appointed counsel, repeatedly attempting to explain that to proceed to trial that Monday, Payne would be representing himself and what that entailed. The record is clear that Payne had communicated privately with his new attorney prior to the court's colloquy, understood his choices, and made a knowing and voluntary choice to waive counsel and proceed self-represented that Monday. On this record, it is clear beyond a reasonable doubt that any error in limiting Payne's access to counsel during this hearing would not have changed the outcome of the hearing and was therefore harmless.

Moreover, the evidence of Payne's guilt at trial was overwhelming. We are convinced beyond a reasonable doubt that even if Payne had unfettered access to his counsel during the hearing on his motion to proceed self-represented, and even if, as a result, he had opted to continue the trial and later proceed with trial counsel, the ultimate outcome of trial would not be different. Both victims testified to the events underlying the crimes, and video footage clearly

13

showed Payne entering the girls' vehicle, remaining inside for four to five minutes, and then walking away toward a hotel. Accordingly, any error violating Payne's right to access counsel in that hearing was harmless beyond a reasonable doubt.

### III. WAIVER OF RIGHT TO COUNSEL

Payne argues that the trial court erred by finding that he made an unequivocal, knowing, intelligent, and voluntary waiver of his right to counsel. We disagree.

1. *Legal Principles*

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to assistance of counsel. A criminal defendant also has a right to self-representation under the same provisions. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). The right of self-representation is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Id*.

However, a tension exists between the rights of self-representation and to counsel. *State v. Howard*, 1 Wn. App. 2d 420, 424, 405 P.3d 1039 (2017). By requesting to represent himself, a defendant waives his right to counsel. *Id*. at 425. Therefore, criminal defendants do not have an absolute right to self-representation. *Id*. A trial court may allow a defendant to represent himself only if the defendant waives his right to counsel voluntarily, knowingly, and intelligently. *Id*. And a criminal defendant has a right to self-representation only if the right to counsel is properly waived. *Id*.

The trial court must indulge every reasonable presumption against waiver of the right to counsel before granting a defendant's request to proceed self-represented. *Madsen*, 168 Wn.2d at

504. Courts must engage in a two-step determination. First, the court must determine whether the request for self-representation is timely and unequivocal. *State v. Curry*, 191 Wn.2d 475, 486, 423 P.3d 179 (2018). The defendant's demand to proceed self-represented must be unequivocal in the context of the record as a whole. *State v. Modica*, 136 Wn. App. 434, 441, 149 P.3d 446 (2006). Second, if the request is timely and unequivocal, the court must then determine whether the request is also voluntary, knowing, and intelligent. *Id*. And the trial court may deny a request for self-representation if the request is "made without a general understanding of the consequences." *Madsen*, 168 Wn.2d at 505. Once a defendant makes an unequivocal request to proceed self-represented, the trial court must determine whether the defendant's waiver of the right to counsel is valid, "preferably through a colloquy on the record assuring that the defendant understands the risks of self-representation." *State v. Vermillion*, 112 Wn. App. 844, 851, 51 P.3d 188 (2002).

"We review a trial court's decision to grant or deny a defendant's request to proceed pro se for abuse of discretion." *Curry*, 191 Wn.2d at 483. A trial court abuses its discretion if its decision is manifestly unreasonable or rests on facts unsupported in the record or was reached by applying the wrong legal standard. *Id*. The trial court sits in a favorable position compared to that of an appellate court in that trial judges have far more experience considering requests to proceed self-represented and are better equipped to balance the competing considerations. *Id*. at 484-85. "Additionally, trial courts have the benefit of observing the behavior and characteristics of the defendant, the inflections and language used to make the request, and the circumstances and context in which it was made." *Id*. at 485. The defendant has the burden to show that his waiver of the right to counsel was not knowing and intelligent. *Howard*, 1 Wn. App.2d at 426.

2. *The Request Was Unequivocal*

Payne contends that his request to proceed pro se was an equivocal reflection of his frustration with the delays for trial as opposed to an actual desire to represent himself. "When a defendant's request to proceed pro se is actually an expression of frustration with a trial's delay, rather than a true desire to proceed without an attorney, the request is equivocal." *Modica*, 136 Wn. App. at 442. However, that a defendant is motivated by something other than a singular desire to conduct his own defense does not necessarily render a request equivocal. *Id.*; *see also State v. DeWeese*, 117 Wn.2d 369, 378-79, 816 P.2d 1 (1991) (holding that defendant's request to proceed self-represented was unequivocal, despite being motivated by frustration with attorney's performance).

Here, Payne made the strategic choice to assert his right to self-representation in order to proceed to trial more quickly than waiting for newly appointed counsel to prepare. When the trial court informed Payne that trial would not happen before early January with appointed counsel, he clearly stated "Well, I will refuse. I will refuse. I am ready to go on Monday." RP (Dec. 10, 2021) at 15. After going over the maximum penalties for each crime charged and many other things, the trial court asked Payne if, in light of the penalties that he would face if found guilty, he still wanted to represent himself and give up his right to be represented by an attorney, Payne said "Yes, I would like to present my case [by] myself." RP (Dec. 10, 2021) at 24. While the record reflects Payne's frustration with his new counsel's request for continuance to prepare, the record also reflects, after the court's lengthy colloquy, Payne's strategic decision to represent himself and proceed to trial before January. Regardless of his underlying motivation for doing so, Payne's request was clear and unequivocal when reviewing the record as a whole.

16

3. *The Request Was Knowing and Voluntary*

Payne also contends that his request was not knowing and voluntary. The record does not support Payne's argument. The trial court engaged in a lengthy colloquy with Payne that went beyond a routine inquiry and was sufficient to determine the validity of Payne's waiver of the right to assistance of counsel. *State v. Lillard*, 122 Wn. App. 422, 427-30, 93 P.3d 969 (2004). The trial court informed Payne of the seriousness of and maximum penalties associated with the charges levied against him, as well as the technical procedural rules applicable to a criminal jury trial. The court also asked Payne several questions to ascertain his legal knowledge, and alerted him to the difficulty of proceeding self-represented.

Furthermore, the trial court repeatedly advised Payne not to proceed self-represented, saying "it would be far better for you to be defended by a trained lawyer," "[i]t's unwise of you to try to represent yourself," and "I would strongly urge you to not represent yourself." RP (Dec. 10, 2021) at 23. Payne told the trial court he understood "the consequences of . . . my actions" and "if I lose, I lose." RP (Dec. 10, 2021) at 33. The court then asked Payne, "[I]n light of the penalties that you might suffer if you are found guilty and in light of all the difficulties representing yourself, is it still your desire to represent yourself and to give up your right to be represented by an attorney?" and "is the decision to waive an attorney to represent yourself, is that entirely voluntary on your part?" RP (Dec. 10, 2021) at 24-25. Payne responded in the affirmative to both questions. The court's colloquy was sufficient for it to ascertain that Payne's waiver was made knowingly, voluntarily, and intelligently. Accordingly, we hold that the trial court did not abuse its discretion by granting Payne's request to proceed to trial self-represented.

IV. SEXUAL ASSAULT PROTECTION ORDERS

A.  *B.A.*

Payne argues that the trial court exceeded its authority by entering a sexual assault

protection order (SAPO) protecting BA, who was not the victim of a sex offense. The State

concedes, and we agree.

Under RCW 9A.44.210,[2] the trial court has the authority to impose a SAPO for certain

enumerated sex offenses. Fourth degree assault with sexual motivation is not one of the

enumerated offenses. RCW 9A.44.210. Accordingly, the trial court did not have the authority to

impose a SAPO protecting BA who was the victim of fourth degree assault with sexual

motivation, but not of commercial sex abuse of a minor. As a result, the trial court must strike

the SAPO protecting BA upon remand. This holding does not preclude the trial court from

considering a lawful no contact order protecting BA.

B.  *Expiration Dates*

Payne also argues that the expiration date for BK's SAPO exceeds the maximum

allowable term and must be amended. The State concedes, and we accept the State's concession.

"A trial court may only impose a statutorily authorized sentence." *State v. Paulson*, 131

Wn. App. 579, 588, 128 P.3d 133 (2006). If a trial court "exceeds its sentencing authority" under

the statute, "its actions are void." *Id*. We review de novo whether an individual's sentence

exceeds statutory authority. *State v. Button*, 184 Wn. App. 442, 446, 339 P.3d 182 (2014). We

---

[2] Former RCW 7.90.150(6)(c) was recodified as RCW 9A.44.210(6)(c) in 2021—the only
difference is the previously mentioned change in terminology from "sexual assault protection
order" to "sexual assault no-contact order."

also review de novo whether the length of a SAPO was correctly calculated. *State v. Navarro*, 188 Wn. App. 550, 553, 354 P.3d 22 (2015).

A final SAPO "entered in conjunction with a criminal prosecution shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole." RCW 9A.44.210(6)(c). As this court has previously explained, the statute's "plain language directs that protection orders entered in conjunction with a criminal prosecution will remain in effect for two years following any sentence the court actually imposes in that proceeding." *Navarro*, 188 Wn. App. at 555. Accordingly, "all sexual assault protection orders entered against a defendant in one criminal prosecution expire two years after the expiration of the longest sentence." *Id.* at 552.

Here, Payne was sentenced to 34 months in prison and 36 months of community custody, for a total of 70 months. He is entitled to approximately 10 months of credit for time served in pretrial detention. Although his precise release date is unknown, and the SAPOs will not expire for another two years after his release, that date will likely be earlier than the current 10-year expiration of the SAPOs. Accordingly, we hold that on remand, the trial court must strike the 10-year expiration date and adjust the language for the expiration date of the SAPO.[3]

---

[3] Because an offender's actual release date is unknown at the time of sentencing, a SAPO "should not provide a fixed expiration date." *Navarro*, 188 Wn. App. at 556. Instead, a "preferable approach is simply to track the language of the statute by stating, for example, that the order 'shall remain in effect for a period of two years following the expiration' of the longest sentence served by the offender as a result of the prosecution. RCW 7.90.150(6)(c)." *Id.*

V.  SENTENCING TERMS

A.      *Mental Health Examination*

Payne argues that the trial court erroneously ordered him to participate in mental health evaluation and treatment without finding that he has a mental illness. The State agrees that the trial court did not make the proper findings regarding its order to complete a mental health evaluation and to comply with treatment. Payne contends that the proper remedy for this error is to strike the mental health evaluation conditions from his judgment and sentence. The State responds that the case should be remanded with instructions to the trial court to consider the issue and make the appropriate findings. We agree that the trial court failed to make the requisite findings and agree with the State that upon remand the trial court should determine whether to order a mental health evaluation.

Whether a trial court has statutory authority to impose a community custody condition is reviewed de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If a court does have authority, the imposition of community custody conditions is reviewed for abuse of discretion. *State v. Johnson*, 184 Wn. App. 777, 779, 340 P.3d 230 (2014). A decision based on untenable grounds or contrary to law is an abuse of discretion. *Id*.

A trial court has the authority to order a defendant whose sentence includes a term of community custody to "undergo a mental status evaluation . . . if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense." RCW 9.94B.080.

In *State v. Brooks*, the court held that the trial court abused its discretion by ordering a mental health evaluation and treatment without finding that the defendant was mentally ill and that the condition likely influenced the offense. 142 Wn. App. 842, 851-52, 176 P.3d 549 (2008).

Similarly, in *State v. Shelton*, the court held that the trial court abused its discretion by ordering a mental health evaluation without making the necessary statutory findings under former RCW 9.94B.080 (2008). 194 Wn. App. 660, 675-76, 378 P.3d 230 (2016). The court reasoned that the plain language of the statute mandated that a "court may order a mental health evaluation only if the court finds [the defendant] 'is a mentally ill person as defined in RCW 71.24.025.'" *Id*. at 675. And despite the fact that the "court found 'mental health issues contributed to this offense' and 'treatment is reasonably related to the circumstances of this crime and reasonably necessary to benefit the defendant and the community,'" such findings did not satisfy the requirements of former RCW 9.94B.080. *Id*. at 676 (quoting former RCW 9.94B.080 (2008)). The court remanded for the trial court to determine whether to order an evaluation based on the requirements RCW 9.94B.080. *Id*.

Here, the trial court had the statutory authority to impose a mental health evaluation under RCW 9.94B.080. But the court abused its discretion by doing so without finding Payne mentally ill as defined in RCW 71.24.025 and that the condition is likely to have influenced the offense. *Brooks*, *Shelton*, and the language of the statute make clear that the court could order a mental health evaluation only if the court found that Payne is a "mentally ill person" as defined in RCW 71.21.025 and that the condition is likely to have influenced the offense. The court did not make any such findings.

21

Accordingly, we reverse the trial court's imposition of a mental health evaluation condition and remand for the trial court to determine whether to order a mental health evaluation consistent with the requirements in RCW 9.94B.080.

B.      *Community Custody Supervision Fees*

Payne also argues that the trial court erred by imposing community custody supervision fees despite finding Payne indigent. The State agrees that the supervision fees should be stricken, and we accept the State's concession.

Former RCW 9.94A.703(2)(d) (2018) provided, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." Recently, the legislature amended the statute. See Second Substitute H.B. 1818, 67th Leg., Reg. Sess. (Wash. 2022). The amendment deletes the subsection from the statute. This amendment applies to cases pending on appeal. *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022). Accordingly, the trial court must strike the community custody supervision fees from the felony judgement and sentence at resentencing.

Similarly, the trial court erroneously imposed community supervision fees in Payne's misdemeanor judgment and sentence. The misdemeanor judgment and sentence further ordered Payne to pay the collection costs of unpaid legal financial obligations. RCW 36.18.190; On that judgment and sentence, the trial court appears to have made a scrivener's error, finding Payne not indigent. Upon resentencing, the trial court should correct its scrivener's error and strike the community supervision fees and collection costs from Payne's misdemeanor judgment and sentence.

22

C.      *Crime Victim Penalty Assessment*

In a supplemental brief, Payne also argues that we should remand for the trial court to strike the $500 crime VPA and $100 DNA fee. We agree.

RCW 7.68.035 was recently amended in Engrossed Substitute House Bill 1169. ESHB 1169 added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Additionally, the legislature amended RCW 43.43.7541, eliminating the provision providing for a DNA collection fee. LAWS OF 2023, ch. 449, § 4. Although these amendments did not take effect until after Payne's sentencing, they apply to his case because this matter is on direct appeal. *State v. Ellis*, 27 Wn. App. 2d 1, 530 P.3d 1048 (2023). Because the trial court found Payne indigent, the court must strike the crime VPA and DNA collection fee at resentencing.

## VI.  PERSONAL RESTRAINT PETITION

Payne filed a motion to dismiss and vacate judgment in the superior court, which the superior court transferred to this court under CrR 7.8 for consideration as personal restraint petition (PRP). Payne raises three issues, none of which have merit. Accordingly, we dismiss his petition.

Collateral relief from a conviction is an extraordinary remedy that seeks to disturb a final judgment; therefore, a personal restraint petitioner must meet a high standard to obtain relief. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022). When claiming relief on the basis of trial court error, the personal restraint petitioner in most cases must demonstrate that they were actually and substantially prejudiced as a result of constitutional error or that the trial

suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). The petitioner must make this showing by a preponderance of the evidence. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). A showing of actual and substantial prejudice requires that there be an error of substance, not merely of procedure. *State v. Buckman*, 190 Wn.2d 51, 68, 409 P.3d 193 (2018).

Payne argues that he is entitled to relief because the State violated rulings in limine to not speak objections in front of the jury. The State moved in limine to exclude "speaking objections" in front of the jury. CP at 117. "Speaking objections" are objections in which an attorney uses more than the minimum verbiage necessary to identify the grounds for the objection and/or an attorney gives any comment on the evidence. CP at 117. Payne contends that the State violated its own motion in limine but fails to identify with any specificity any examples of such violations. Moreover, it does not appear that Payne objected to any allegedly improper objections, thereby waiving any claim of error.

Payne also argues that photos and videos were withheld from him in violation of *Brady*.[4] But Payne does not identify what photos or videos he takes issue with, nor does he identify how he was prejudiced by the alleged error. A petitioner must state with particularity facts that, if proven would entitle him to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). He must at least identify the existence of material evidence and where it can be

---

[4] *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

found. *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 641, 362 P.3d 758 (2015). Payne fails to show he is entitled to relief.

Finally, Payne contends that the mother of one of the victims told a member of the jury pool, who was not ultimately selected as a member of the jury for trial, "they did this to sue." PRP at 1. But Payne fails to support his claim with any evidence. When a petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that they have competent, admissible evidence supporting the allegations. *Yates*, 177 Wn.2d at 18. If the evidence is based on knowledge in the possession of others, the petitioner must present their affidavits, with admissible statements, or other corroborative evidence. *Id*. Payne does not support his claim with any affidavits from either the victim's mother or the jury pool participant. As a result, his argument is insufficient.

CONCLUSION

In conclusion, we hold that the trial court did not abuse its discretion by allowing Payne's second trial counsel to withdraw, any error violating Payne's right to access counsel was harmless beyond a reasonable doubt, and Payne's waiver of his right to counsel was unequivocal, knowing, intelligent, and voluntary. We further hold that the trial court erred by imposing a SAPO protecting BA and by imposing a SAPO protecting BK for a duration that exceeded the trial court's statutory authority. We also hold that the trial court erred by ordering Payne undergo a mental health evaluation without first finding him to be a mentally ill person under RCW 71.24.025 and that this condition is likely to have influenced the offense, and by imposing supervision and collection fees and a VPA. Finally, we hold that Payne fails to show that he is entitled to collateral relief in his PRP.

No. 56637-1-II

Accordingly, we affirm Payne's convictions, remand to the trial court to correct Payne's judgment and sentence in accordance with this opinion, and dismiss Payne's personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Veljacic, A.C.J.